EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Lukoil Pan Americas, LLC<br><br>Recurrida<br><br>v.<br><br>Municipio de Guayanilla<br><br>Peticionario | Certiorari<br><br>2015 TSPR 39<br><br>192 DPR ____ |

Número del Caso: AC-2013-109


Fecha: 9 de abril de 2015


Tribunal de Apelaciones:

       Región Judicial de San Juan, Panel III


Abogados de la Parte Peticionaria:

       Lcdo. Pedro E. Ortiz Alvarez
       Lcdo. Jesús Rodríguez Urbano
       Lcdo. Luis E. Meléndez Cintrón

Abogados de la Parte Recurrida:

       Lcda. Jane Patricia Van Kirk
       Lcdo. Brian M. Dick Biascochea
       Lcdo. Waldemar Favery Villaespesa
       Lcdo. Jaime Toro Monserrate



Materia: Contribuciones – Requisitos para que un municipio pueda imponer el pago de patentes municipales.



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Lukoil Pan Americas, LLC | | *Certiorari* |
| Recurrida | | |
| v. | AC-2013-0109 | |
| Municipio de Guayanilla | | |
| Peticionario | | |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 10 de abril de 2015.

Comparece ante nos el Municipio de Guayanilla (en adelante, el "Municipio") y solicita la revocación de una Sentencia del Tribunal de Apelaciones. Mediante esta se confirmó una Sentencia del Tribunal de Primera Instancia que declaró Con Lugar una Demanda de impugnación de deficiencia de patentes municipales presentada por Lukoil Pan Americas, LLC (en adelante, "Lukoil").

En esta ocasión nos corresponde resolver si, en el caso de una compañía dedicada a la compraventa de productos derivados del petróleo, la Ley Núm. 113 de 10 de julio de 1974, según enmendada, conocida como Ley de Patentes Municipales, 21 LPRA sec. 651 *et seq.*, provee una excepción a la regla general de que una compañía está obligada a tener presencia física en el municipio impositor. Ello, a su vez, nos permite delimitar el

alcance de nuestros pronunciamientos en *Lever Bros. Export Corp. v. Alcalde S.J.*, *infra*, y su progenie.

Veamos los hechos que dieron génesis a la controversia de autos.

I

Lukoil es una compañía de responsabilidad limitada organizada bajo las leyes del estado de Delaware y registrada en el Departamento de Estado como una compañía foránea autorizada a hacer negocios en Puerto Rico. La misma se dedica a la compraventa de productos derivados del petróleo desde sus oficinas comerciales localizadas en el estado de Nueva York.

Durante el año 2009, la Autoridad de Energía Eléctrica (en adelante, la "AEE") envió, desde el Municipio de San Juan, una petición de cotización a Lukoil relacionada a la compra de combustible para la central de la mencionada instrumentalidad pública ubicada en Costa Sur. Así las cosas, Lukoil procedió a enviarle a la AEE la cotización solicitada desde sus oficinas en Nueva York, la cual no contemplaba el pago de patentes municipales. Tras la AEE enviarle la notificación de la adjudicación de la Subasta a Lukoil, esta realizó todas las gestiones para adquirir el combustible y enviarlo a la AEE desde sus oficinas en Nueva York. Para el transporte del combustible, Lukoil contrató compañías marítimas independientes con el propósito de que realizaran las

entregas en el puerto del Municipio, según requerido por la AEE.

Por motivo de la transacción antes descrita, el Municipio notificó a Lukoil una deficiencia en el pago de patentes municipales por una cantidad ascendente a ciento setenta y cinco mil trescientos diecisiete dólares con setenta y seis centavos ($175,317.76). Oportunamente, Lukoil solicitó reconsideración ante el Municipio. No obstante, el Municipio confirmó la imposición de la deficiencia tributaria.

Así las cosas y luego de varios trámites procesales, el 20 de abril de 2012 Lukoil presentó una Demanda de impugnación de deficiencia de patentes municipales ante el Tribunal de Primera Instancia.[1] En esta alegó que no procedía la imposición de patentes municipales por la transacción antes mencionada debido a que no tenía ni había tenido oficina, establecimiento comercial o presencia física en el Municipio. Alegó además que no tenía empleados en el Municipio y que tampoco había prestado servicios ni incurrido en negocios en ninguna oficina o establecimiento comercial en el Municipio. También adujo que no almacenó el combustible en el Municipio ni en ningún otro lugar en Puerto Rico. Conforme a lo anterior, alegó que la imposición de la patente municipal era contraria a la Constitución de los Estados

---

[1] Véase la Demanda presentada por Lukoil Pan Americas, LLC (en adelante, "Lukoil"), Apéndice del recurso de *Certiorari*, págs. 30-36.

Unidos y lo resuelto por este Tribunal en el caso *E.L.A. v. Northwestern Selecta*, 185 DPR 40 (2012).

Por su parte, el Municipio presentó su Contestación a la Demanda, y en esencia alegó que actuó conforme a Derecho al imponer la deficiencia ya que el combustible fue recibido en uno de sus muelles y no era necesario que el contribuyente tuviera oficinas y/o empleados dentro de la demarcación territorial municipal.[2] Como parte de sus alegaciones responsivas, el Municipio admitió que Lukoil "no tiene establecimientos comerciales ubicados en el Municipio".[3]

El 8 de agosto de 2012, Lukoil presentó una Moción para que se Dicte Sentencia por las Alegaciones y Moción para que se Desestime la Reconvención Enmendada.[4] En síntesis, alegó que procedía que el tribunal dictase Sentencia a su favor debido a que el Municipio admitió que Lukoil no tenía presencia física en el Municipio, lo cual era un requisito para la imposición de patentes municipales conforme a la Cláusula de Comercio Interestatal de la Constitución de los Estados Unidos y la

---

[2] Véanse la Contestación a la Demanda y la Contestación Enmendada a la Demanda presentadas por el Municipio de Guayanilla (en adelante, el "Municipio"), Apéndice del recurso de *Certiorari*, págs. 37-45.

[3] *Íd.*, pág. 43.

[4] Véase la Moción para que se Dicte Sentencia por las Alegaciones y Moción para que se Desestime la Reconvención Enmendada presentada por Lukoil, Apéndice del recurso de *Certiorari*, págs. 46-51.

Ley Núm. 113, *supra*. Ello fue objeto de una oposición del Municipio.[5]

Tras considerar los planteamientos de las partes, el 17 de octubre de 2012 el Tribunal de Primera Instancia notificó Sentencia mediante la cual expuso que para que procediera la imposición de patentes municipales, el comerciante objeto de la actividad tributable debía tener una oficina o establecimiento comercial en el municipio en cuestión.[6] Así las cosas, y debido a que no estaba en controversia el hecho de que Lukoil no tenía presencia física en el Municipio, el foro primario declaró Con Lugar la Demanda presentada por Lukoil, mientras que declaró No Ha Lugar la Reconvención instada por el Municipio. Oportunamente, el Municipio presentó una Moción de Reconsideración ante el foro primario, la cual fue declarada No Ha Lugar.[7]

Inconforme con la determinación del foro primario, el 20 de diciembre de 2012 el Municipio recurrió al Tribunal de Apelaciones.[8] El 29 de agosto de 2013, el foro apelativo intermedio emitió una Sentencia mediante la cual confirmó

---

[5] Véase la Oposición a Moción para que se Dicte Sentencia por las Alegaciones y Moción para que se Desestime la Reconvención presentada por el Municipio el 12 de septiembre de 2012, Apéndice del recurso de *Certiorari*, págs. 52-70.

[6] Véase la Sentencia emitida por el Tribunal de Primera Instancia el 11 de octubre de 2012 y notificada el 17 de octubre de 2012, Apéndice del recurso de *Certiorari*, págs. 123-127.

[7] Véase la Moción de Reconsideración presentada por Lukoil, Apéndice del recurso de *Certiorari*, págs. 71-91.

[8] Véase el Escrito de Apelación presentado por el Municipio ante el Tribunal de Apelaciones, Apéndice del recurso de *Certiorari*, págs. 1-29.

el dictamen del foro primario.[9] Ante ello, el Municipio presentó una Moción de Reconsideración que fue denegada por el foro apelativo intermedio.

Aun inconforme, el 25 de octubre de 2013 el Municipio presentó un recurso de apelación ante este Tribunal, aduciendo que el foro apelativo intermedio erró al concluir que para imponer patentes municipales sobre la venta de combustible era necesario que el comerciante tuviera una oficina o establecimiento comercial en el Municipio, a pesar de que existe una excepción a dicha regla general. Como corolario a lo anterior, el Municipio también alega que el foro apelativo intermedio se equivocó al determinar que la presencia de una oficina o establecimiento comercial en el Municipio era un requisito para la imposición de patentes municipales, alegando a su vez que el factor determinante es si el evento económico que genera el ingreso ocurrió dentro del Municipio. Finalmente, el Municipio argumenta que una interpretación integral de las leyes aplicables y sus enmiendas autorizan la imposición de patentes municipales sobre la venta de crudo en casos como el que nos ocupa. Fundamentándose en todo lo anterior, solicita que declaremos que procede el cobro de la patente, o en la alternativa, que se devuelva el caso al foro de instancia y se permita la presentación de evidencia sobre la actividad alegadamente tributable.

---

[9] Véase la Sentencia emitida por el Tribunal de Apelaciones el 29 de agosto de 2013 y notificada el 4 de septiembre de 2013, Apéndice del recurso de *Certiorari*, págs. 247-266.

Por su parte, Lukoil argumenta ante nos, en primer lugar, que la Ley Núm. 113, *supra*, requiere que el comerciante tenga una oficina o establecimiento comercial en el municipio en cuestión. Segundo, arguye que la interpretación de la Ley Núm. 113, *supra*, que el Municipio esboza a favor de su contención es inconstitucional debido a que está en conflicto con la Cláusula de Comercio de la Constitución de los Estados Unidos en su estado durmiente.

El 28 de marzo de 2014, atendimos el recurso presentado como una petición de *certiorari* y lo declaramos No Ha Lugar. No obstante, ante una oportuna Primera Moción de Reconsideración sometida por el Municipio, el 30 de mayo de 2014 reconsideramos y expedimos el auto. Con el beneficio de los alegatos de ambas partes, nos encontramos en posición para resolver el recurso sin ulterior trámite.

II

A.

La Constitución de Puerto Rico establece que el poder de "imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido". Art. VI, Sec. 2, Const. E.L.A., 1 LPRA, pág. 420. Como se puede observar, nuestra Carta Magna autoriza exclusivamente a la Rama Legislativa a imponer y cobrar contribuciones, a la misma vez que le permite

delegar dichas facultades a los municipios.[10] Por ello, hemos sido consistentes al determinar que debido a que se trata de una facultad delegada, "los municipios no tienen un poder inherente, independiente del Estado, para imponer contribuciones". *Interior Developers v. Mun. de San Juan*, 177 DPR 693, 703 (2009) (Citando a *Levy, Hijo v. Mun. de Manatí*, 151 DPR 292, 299 (2000)).

Con el propósito de que los municipios tengan mecanismos para recaudar fondos y así poder brindarles más servicios a sus ciudadanos, la Asamblea Legislativa ha adoptado varios estatutos en donde se les delega la facultad de imponer contribuciones a nivel municipal.[11] Los impuestos municipales "responden a la premisa de que los negocios sitos en un Municipio se benefician de la organización local para efectuar sus actividades de interés pecuniario y, por tal razón, deben contribuir al sostenimiento del mismo". *Mun. de Utuado v. Aireko Const. Corp.*, 176 DPR 897, 904 (2009); *Banco Popular v. Mun. de Mayagüez*, 120 DPR 692, 700 (1988).

Anteriormente hemos reconocido que nuestro ordenamiento favorece una interpretación amplia del poder

---

[10] La Asamblea Legislativa también ostenta el poder constitucional para "crear, suprimir, consolidar y reorganizar municipios, modificar sus límites territoriales y determinar lo relativo a su régimen y función". Art. VI, Sec. 1, Const. E.L.A., 1 LPRA, pág. 419.

[11] Entre ellos se encuentran la Ley Núm. 81-1991, según enmendada, conocida como Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, 21 LPRA sec. 4001 *et seq.*; la Ley Núm. 83-1991, según enmendada, conocida como Ley de Contribución Municipal sobre la Propiedad de 1991, 21 LPRA sec. 5001 *et seq.*; la Ley Núm. 80-1991, según enmendada, conocida como Ley del Centro de Recaudación de Ingresos Municipales, 21 LPRA sec. 5801 *et seq.*, y la Ley Núm. 113 de 1974, según enmendada, conocida como Ley de Patentes Municipales, 21 LPRA sec. 651 *et seq.*

tributario de los municipios. *Pfizer Pharm. v. Mun. de Vega Baja*, 182 DPR 267, 287 (2011); *First Bank de P.R. v. Mun. de Aguadilla*, 153 DPR 198, 203 (2001); *Lever Bros. Export Corp. v. Alcalde S.J.*, 140 DPR 152 (1996); *Banco Popular v. Mun. de Mayagüez,* 120 DPR 692, 696 (1988). Así las cosas, cuando hay autoridad en ley para ello, de ordinario no habremos de intervenir con la regulación económica municipal ya que se trata de una función primordialmente legislativa. *Pfizer Pharm. v. Mun. de Vega Baja, supra; Banco Popular v. Mun. de Mayagüez, supra*.

A pesar de que se favorece una interpretación liberal de los poderes tributarios otorgados a los municipios, debemos tener presente que como cuestión de hermenéutica también hemos reiterado que los estatutos contributivos deben ser interpretados razonablemente, teniendo en mente el propósito y la intención del legislador. *Ortiz Chévere v. Srio. Hacienda*, 186 DPR 951, 975 (2012); *Lilly del Caribe v. CRIM*, 185 DPR 239, 251 (2012); *Licorería Trigo, Inc. v. Srio. de Hacienda*, 94 DPR 270, 279 (1967).

Asimismo, los estatutos contributivos "no se habrán de interpretar de forma extensiva, sino que se deberán interpretar de una forma justa y conforme a sus propios y expresos términos". *Ortiz Chévere v. Srio. Hacienda, supra*, págs. 975-976 (Citando a *Yiyi Motors, Inc. v. E.L.A.*, 177 DPR 230, 250 (2009)). No obstante, "no podemos interpretar una ley contributiva de manera que facilite la evasión de los tributos que la Asamblea Legislativa ha

establecido". *Ortiz Chévere v. Srio. Hacienda*, *supra*, pág. 976; *Lilly del Caribe v. CRIM*, *supra*, pág. 252; *West India Oil Co. (P.R.) v. Sancho Bonet*, Tes., 54 DPR 732, 744-745 (1939). Aun así, cuando del estatuto no surge con claridad que su propósito es imponer una contribución, estamos obligados a resolver a favor de su no imposición. *Pfizer Pharm. v. Mun. de Vega Baja*, *supra*, págs. 278-279; *Yiyi Motors, Inc. v. E.L.A.*, *supra*, págs. 250-251; *B.B.C. Realty v. Secretario Hacienda*, 166 DPR 498, 511 (2005); *Central Coloso v. Descartes, Tes.*, 74 DPR 481, 486 (1953).

Con estos principios en mente, pasemos a examinar el estatuto contributivo que dio lugar a la controversia de autos.

B.

La imposición y el cobro de la contribución conocida como la patente municipal es la que nos atañe en este caso. Este tipo de impuesto municipal está regulado en detalle por la Ley Núm. 113, *supra*. Al igual que otros estatutos en donde se autoriza la imposición y el cobro de contribuciones municipales, la intención del legislador al aprobar la Ley Núm. 113, *supra*, fue la de "proveer un mecanismo a los municipios para generar ingresos y fortalecerlos económicamente para que cumplan sus funciones en beneficio del bienestar general de los ciudadanos que habitan en esa área". *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 818 (2013); *Café Rico, Inc. v.*

*Mun. de Mayagüez*, 155 DPR 548, 559 (2001); *F.D.I.C. v. Mun. de San Juan*, 134 DPR 385, 398 (1993).

Específicamente, la Ley Núm. 113, *supra*, define la patente municipal como "la contribución impuesta y cobrada por el municipio (...) a toda persona dedicada con fines de lucro a la prestación de cualquier servicio, a la venta de cualquier bien a cualquier negocio financiero o negocio en los municipios". 21 LPRA sec. 651a(a)(16). Véase además, la Sec. 4 de la Ley Núm. 113 sobre industrias y negocios sujetos a patentes. 21 LPRA sec. 651c. Aunque en primera instancia la patente municipal parece tener la forma de un permiso o licencia para ejercer una actividad económica dentro de un municipio, lo cierto es que en realidad se trata de un impuesto sobre el volumen de negocios de la empresa objeto del tributo. *Muñiz Burgos, Inc. v. Mun. de Yauco*, 187 DPR 665, 681 (2013); *Burlington Air Exp., Inc. v. Mun. Carolina*, 154 DPR 588, 603-604 (2001); *American Express Co. v. Mun. de San Juan*, 120 DPR 339, 346 (1988). Cónsono con ello, la Ley Núm. 113, *supra*, establece que la patente municipal habrá de calcularse "a base del volumen de negocio que lleva a cabo la industria o empresa en ese municipio". *El Día, Inc. v. Mun. de Guaynabo*, *supra*, pág. 818.

La Sec. 2 de la citada Ley Núm. 113 provee varias definiciones que son pertinentes para resolver la controversia de autos. Como regla general, se define *volumen de negocios* como

los ingresos brutos que se reciben o se devenguen por la prestación de cualquier servicio, por la venta de cualquier bien, o por cualquier otra industria o negocio en el municipio donde la casa principal realiza sus operaciones, o los ingresos brutos que se reciban o devenguen por la casa principal en el municipio donde ésta mantenga oficinas, almacenes, sucursales, planta de manufactura, envase, embotellado, procesamiento, elaboración, confección, ensamblaje, extracción, lugar de construcción, o cualquier otro tipo de organización, industria o negocio para realizar negocios a su nombre, sin tener en cuenta sus ganancias o beneficios. 21 LPRA sec. 651a(a)(7)(A)(i).[12]

De otra parte, se define *ingreso bruto* como "la totalidad de ingresos de fuentes dentro y fuera de Puerto Rico **que sean atribuibles a la operación que se lleva a cabo en cada municipio...**". 21 LPRA sec. 651a(a)(7)(A)(ii) (Énfasis nuestro). Asimismo, la ley define *atribuibles a la operación* como "la totalidad de los ingresos derivados dentro y fuera de Puerto Rico que reciba o devengue una persona relacionada con la explotación de una industria o negocio en Puerto Rico". 21 LPRA sec. 651a(a)(15).

En el caso particular de las ventas, tal y como la transacción comercial que ocurrió en la controversia ante nos, la Ley Núm. 113, *supra*, dispone lo siguiente:

El volumen de negocios será, tratándose de ventas de tiendas, casas de comercio u otras industrias o negocios, el importe de las ventas brutas luego de deducidas las devoluciones; el monto del valor de los fletes y pasajes en cada oficina establecida en cada municipio, tratándose de vehículo para el transporte terrestre; y en

---

[12] La Ley Núm. 113, *supra*, establece ciertas reglas a seguir para determinar el volumen de negocios dependiendo del tipo de empresa de que se trate: (a) los negocios financieros; (b) los comisionistas, agentes, representantes y contratistas; (c) las ventas de tiendas, casas de comercio y otras industrias o negocios; (d) estaciones de gasolina, y (e) servicios de telecomunicaciones. 21 LPRA sec. 651a.

general el montante de las entradas recibidas o devengadas por cualquier industria o negocio de acuerdo con la naturaleza de la industria o el negocio. 21 LPRA sec. 651a(a)(7)(D).

Como se desprende de la sección de ley citada, únicamente se trata de la manera en que habrán de contabilizarse las ventas para efectos de calcular el volumen de negocios correspondiente. En ningún lugar de esta sección se establece a qué municipio le corresponde cobrar la patente municipal.

Por otro lado, en la Sec. 3 de la Ley Núm. 113, *supra*, se establece, *inter alia*, cómo habrán de imponerse las patentes municipales en caso de que el contribuyente tenga más de una oficina, establecimiento comercial, almacén u otra organización de industria o negocio en un municipio, o en caso de que tenga oficinas, establecimientos comerciales, almacenes u otra organización de industria o negocio en más de un municipio:

> Cuando se trate de personas con oficinas o almacenes que sean separados y distintos a cualquier otro negocio o industria que se tenga en la oficina o casa principal de dicha organización, en el mismo municipio, les será impuesta la patente separadamente, pero tratándose de industrias o negocios que se tengan tanto en la casa principal, así como en cualquier sucursal o almacén de aquélla, en el mismo municipio, la patente se impondrá únicamente a la casa principal, pero sobre la base del volumen de negocios total de las industrias o negocios que se tienen en la casa principal y en todas sus sucursales y almacenes. Disponiéndose, sin embargo, que cuando se trate de industrias o negocios con oficina principal establecida en determinado municipio y manteniendo otras organizaciones de industria o negocio, oficinas, sucursales o almacenes haciendo negocios en otros

municipios que no sea donde radica la casa principal, la patente municipal debe ser impuesta por cada municipio en donde la casa principal mantenga oficinas, sucursales, almacenes u otras organizaciones de industria o negocio a base del volumen de negocios realizados por o a nombre de la casa principal en dicho municipio. 21 LPRA sec. 651b.

Nótese que, independientemente de cual sea el caso particular del negocio o industria del que se trate, la Sec. 3 de la citada Ley Núm. 113 contempla el que haya presencia física en el municipio impositor, ya sea mediante "oficinas, sucursales, almacenes u otras organizaciones de industria o negocio". *Íd.*

Tomando como punto de partida las disposiciones de la Ley Núm. 113, *supra*, anteriormente habíamos pasado juicio sobre los requisitos que deben cumplirse para que una compañía esté sujeta a la tributación de patentes municipales en un municipio en particular. En ese sentido hemos expresado que

> **el factor determinante es que el ingreso se produzca como consecuencia de los negocios que la persona, natural o jurídica, desempeña en el municipio, lo cual implica que el ingreso no hubiese sido generado a no ser por las operaciones llevadas a cabo allí.** *The Coca Cola Co. v. Mun. de Carolina*, 136 DPR 216, 221 (1994) (Énfasis nuestro). *Véanse, además: El Día, Inc. v. Mun. de Guaynabo, supra,* pág. 819; *Pfizer Pharm. v. Mun. de Vega Baja, supra,* pág. 289; *First Bank de P.R. v. Mun. de Aguadilla, supra,* pág. 204; *Lever Bros. Export Corp. v. Alcalde S.J., supra,* pág. 161; *Banco Popular v. Mun. de Mayagüez, supra,* pág. 700.

Igualmente, en caso de que un negocio tenga actividad económica tributable en más de un municipio conforme a las

disposiciones de la Ley Núm. 113, *supra*, el principio de prorrateo que permea la ley exige que

> cada municipio deberá recibir el pago correspondiente de patente municipal **por aquella actividad económica que se materializa dentro de su jurisdicción geográfica**, independientemente de si la misma se devenga o contabiliza finalmente por una casa u oficina en otra municipalidad. *El Día, Inc. v. Mun. de Guaynabo*, *supra*, pág. 819 (Citando a *First Bank de P.R. v. Mun. de Aguadilla*, *supra*, pág. 204) (Énfasis nuestro). *Véase además Lever Bros. Export Corp. v. Alcalde S.J.*, *supra*, pág. 158.

Así las cosas, en *Lever Bros. Export Corp. v. Alcalde S.J.*, *supra*, pág. 161, establecimos que deben concurrir dos (2) requisitos para que opere la imposición de la patente municipal: (1) **"que la empresa o negocio tenga un establecimiento comercial u oficina dedicada con fines de lucro a la prestación de cualquier servicio en el municipio correspondiente"**, y (2) "una vez cumplido con el criterio anterior, es necesario que se determine la base sobre la cual se impondrá la patente". (Énfasis nuestro). En ese caso validamos la imposición de la patente municipal a Lever Bros. Export Corporation, una corporación organizada bajo las leyes del estado de Delaware y cuyas oficinas principales ubicaban en el estado de Nueva York. No obstante, ésta operaba una oficina ubicada en el Municipio de San Juan. Como fundamento para impugnar la notificación de deficiencia de patentes municipales, Lever alegó que esa oficina únicamente proveía servicios de asesoría de mercadeo y técnica para sus distribuidores. Al resolver que procedía

la imposición de la patente municipal en ese caso, expusimos que a pesar de lo alegado por Lever, la oficina ubicada en San Juan "se involucraba directa e indirectamente con las ventas que, a través de distribuidores, realiza esta compañía en Puerto Rico". *Íd.*, pág. 163. Por ello, concluimos que "[e]se tipo de servicio incide indirectamente sobre el volumen de ventas de los productos", lo cual era suficiente para cumplir con los dos (2) criterios antes esbozados y validar la tributación municipal. *Íd.*

Un tiempo después, en *First Bank de P.R. v. Mun. de Aguadilla*, *supra*, pág. 205, reiteramos la norma anterior en el contexto de un banco comercial establecido en Puerto Rico. En ese caso explicamos el tratamiento especial que la Ley Núm. 113, *supra*, le otorga a los bancos al momento de determinar su volumen de negocios y cómo habrá de distribuirse el pago de patentes municipales entre los municipios donde un banco mantenga sucursales. En términos sencillos, explicamos que el volumen de negocios atribuible a los bancos se establece tomando en consideración la cantidad de depósitos de cada sucursal. *Íd.*, págs. 205-206. A base de lo anterior, resolvimos que el Municipio de Aguadilla no podía imponerle el pago de patentes municipales al banco debido a que la sucursal establecida en dicho municipio no recibía depósitos. *Íd.*, pág. 207.

Poco después, en *Royal Bank v. Mun. de San Juan*, 154 DPR 383 (2001), nos enfrentamos a otra controversia en donde un municipio notificó una deficiencia en el pago de patentes municipales a un banco comercial. Según alegaba el Municipio de San Juan, la Ley Núm. 113, *supra*, le otorgaba la facultad de incluir, como parte del volumen de negocios del banco, los intereses devengados por éste en virtud de Contratos de Permuta de Tasas de Interés, conocidos comúnmente como *Interest Rate Swaps*. Tras explicar cómo funciona este tipo de contrato y cómo se calcula el volumen de negocios de un negocio financiero conforme a la Ley Núm. 113, *supra*, volvimos a reiterar los dos (2) criterios esbozados en *Lever Bros. Export Corp. v. Alcalde S.J.*, *supra*, y añadimos lo siguiente:

> Específicamente la ley señala que deberá imponerse la responsabilidad tributaria sobre el volumen de negocios atribuible a la prestación de algún servicio, la industria o el negocio **que se lleve a cabo en el municipio**; esto es, siempre que no sean aplicables algunas de las exenciones de la ley. *Royal Bank v. Mun. de San Juan*, *supra*, págs. 398-399 (Énfasis nuestro).

En atención a ello y debido a que la ley no contempla que los intereses provenientes de los Contratos de Permuta de Tasas de Interés sean incluidos como parte del ingreso bruto de un banco comercial para efectos de determinar su volumen de negocios tributable, concluimos que el municipio no tenía derecho a cobrar las patentes municipales en ese caso. *Íd.*, págs. 399-400.

Finalmente, recientemente reiteramos la norma en *El Día, Inc. v. Mun. de Guaynabo*, *supra*, donde el Municipio

de Cataño pretendía cobrar patentes municipales por el mero hecho de que El Día, Inc. almacenaba papel en dicha municipalidad. Al evaluar los hechos ante nuestra consideración en ese entonces, resultaba evidente que no se cumplía el primer requisito expuesto en *Lever Bros. Export Corp. v. Alcalde S.J.*, *supra*, ya que la corporación no tenía en el Municipio de Cataño "un establecimiento comercial u oficina dedicada, con fines de lucro, a la prestación de servicios", sino que meramente almacenaba el papel para luego utilizarlo y procesarlo en sus instalaciones ubicadas en el Municipio de Guaynabo. *El Día, Inc. v. Mun. de Guaynabo*, *supra*, pág. 824. De otra parte, la corporación "no se dedicaba a vender o a distribuir el papel almacenado ni dependía de mantener el local para producir el periódico *El Nuevo Día*", por lo que era forzoso concluir que dicho almacenamiento de papel no era esencial para el funcionamiento de la corporación. *Íd.* A base de lo anterior, resolvimos que el volumen de negocios atribuible a la corporación equivalía "al importe de lo que recauda por sus servicios de comunicación en el Municipio de Guaynabo, lugar donde lleva a cabo los negocios" y que **"un municipio no puede imponer el pago de patentes a una entidad solo por llevar a cabo una actividad incidental a su negocio dentro de su límite territorial cuando esta no genera ingreso alguno"**. *Íd.*, pág. 825.

C.

Por último, nos corresponde analizar ciertas enmiendas realizadas a la Ley Núm. 113, *supra*, para determinar el tratamiento que la Asamblea Legislativa le ha otorgado a la imposición de patentes municipales sobre la compraventa de productos derivados del petróleo.

Como es sabido, las exenciones contributivas se refieren a "aquellas normas de aplicación especial que establecen que una norma tributaria general no aplica a ciertos supuestos de hecho que delimitan y que, como resultado, impiden que se deriven los efectos jurídicos de ésta, o sea, impiden que nazca la obligación tributaria". *Ortiz Chévere v. Srio. Hacienda*, *supra*, pág. 976 (Citando a *Interior Developers v. Mun. de San Juan*, *supra*, pág. 707). Por tratarse de normas especiales que niegan los efectos de las normas tributarias, "su interpretación no se debe extender más allá de los términos expresos y exactos del estatuto que las otorga y toda duda debe resolverse en contra de su existencia". *Ortiz Chévere v. Srio. Hacienda*, *supra*, pág. 976; *Danosa Caribbean v. Neg. Asist. Contr.*, 185 DPR 1008, 1027 (2012); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 742 (2012); *Café Rico, Inc. v. Mun. de Mayagüez*, *supra*, págs. 559-560. Es decir, las exenciones contributivas habrán de interpretarse restrictivamente. *Interior Developers v. Mun. de San Juan*, *supra*, pág. 707. Por ello, en ocasiones anteriores hemos destacado que se tratan de gracias legislativas que habrán

de interpretarse estrictamente en contra de aquel que alegue tener derecho a ellas. *Íd.; PARDAVCO, Inc. v. Srio. de Hacienda*, 104 DPR 65, 73 (1975). No obstante, también hemos expuesto que "la norma de que las exenciones contributivas no deben ser interpretadas restrictivamente si ello derrota la intención legislativa". *Pepsi-Cola v. Mun. Cidra*, 186 DPR 713, 738 (2011); *Pfizer Pharm. v. Mun. de Vega Baja*, *supra*, pág. 279; *Textile Dye Works, Inc. v. Srio. de Hacienda*, 95 D.P.R. 708, 713 (1968).

Mediante la Ley Núm. 131-1999 la Asamblea Legislativa enmendó la Ley Núm. 113, *supra*, con el propósito de otorgar una exención contributiva en cuanto al pago de patentes municipales a los negocios que forman parte de las Zonas de Comercio Exterior (*Foreign Trade Zones*) según estas fueran declaradas por el Congreso de los Estados Unidos a través de la Ley de Zonas de Comercio Exterior de 1934, 19 U.S.C.A. secs. 81a-81u.[13] Surge de la Exposición de Motivos de la Ley Núm. 131-1999 que la exención sería "en cuanto al volumen de negocios derivado de la

---

[13] La enmienda a la Ley Núm. 113, *supra*, por virtud de la Ley Núm. 131-1999 lee como sigue:

Sección 9.- Exenciones

Se exime del pago de patentes impuestas por autorización de ley a:

(1) . . .

(31) Exclusivamente el ingreso derivado de la actividad de exportación generada de empresas localizadas en una Zona de Comercio Exterior, incluyendo el ingreso que generen los productos utilizados en el proceso de manufactura, mezcla o embalaje realizado dentro de la zona, establecida conforme a lo dispuesto en el Acta de Zonas de Comercio Exterior de 1934 (19 U.S.C. 81C (a)), por una entidad incorporada bajo las leyes del Gobierno de Puerto Rico o por una compañía autorizada a hacer negocios en Puerto Rico.

exportación de aquellas empresas cuyas operaciones se encuentren en las Zonas de Comercio Exterior". De tal manera, lo que se busca es fomentar "las actividades de exportación como una alternativa de desarrollo económico sostenible para Puerto Rico". *Íd.* Es pertinente señalar que el puerto ubicado en el Municipio de Guayanilla queda dentro de una de las Zonas de Comercio Exterior que contempla el estatuto.

Poco después, la Asamblea Legislativa promulgó la Ley Núm. 350-1999, mediante la cual enmendó la Ley Núm. 113, *supra*, para aclarar ciertos aspectos de la exención contributiva otorgada mediante la legislación antes discutida. Conforme a la Exposición de Motivos de la Ley Núm. 350-1999, razonó el legislador en aquél entonces lo siguiente:

> En vista de los beneficios creados por la legislación federal, y la posibilidad de promover el uso de las facilidades del área conocida como la CORCO mediante la exención del pago de los impuestos y aranceles antes mencionados, la Compañía de Desarrollo Industrial de Puerto Rico [la "Compañía"] solicitó [sic] la creación de una sub-zona de comercio extranjero en dicha área geográfica. Dicha solicitud fue aprobada el 11 de agosto de 1982 por la "Foreign Trade Zone Board". A su vez, la Compañía transfirió el derecho de uso y ocupación de dicha sub-zona a la Commonwealth Oil Refining Company, Inc. ("CORCO"), quien actualmente administra la misma para llevar a cabo operaciones de almacenamiento de petróleo y sus derivados, y actividades relacionadas. (...) Un sinnúmero de entidades que suplen combustible y sus derivados necesarios para la generación de energía a la Autoridad de Energía Eléctrica (AEE), llevaban a cabo sus operaciones relacionadas con el almacenaje y venta de petróleo y sus derivados en el extranjero, sin conllevar ningún tipo de beneficio para Puerto Rico. Sin embargo, en

atención a los beneficios contributivos que concede su status como sub-zona de comercio exterior, han optado por utilizar las facilidades de la CORCO.

Así las cosas y tomando en cuenta que no quedaba del todo claro que la exención del pago de patentes municipales habría de aplicar a este tipo de negocio, la Ley Núm. 350-1999 procedió a enmendar la Ley Núm. 113, *supra*, para aclarar que las compañías a las que les aplicaría dicha exención contributiva incluyen pero no se limitan a aquellas "dedicadas a la compra y venta de crudo y sus derivados, cuyas operaciones se lleven a cabo a tenor con lo dispuesto en [la Ley de Zonas de Comercio Exterior de 1934, *supra*]". Además, por virtud de las enmiendas provistas en la Ley Núm. 350-1999, se añadió que la exención contributiva aplicaría al "ingreso procedente de la venta de crudo y sus derivados a la Autoridad de Energía Eléctrica para la generación de energía eléctrica, por compañías dedicadas a la compra y venta de petróleo y sus derivados".[14]

No obstante, con el pasar de los años la Asamblea Legislativa entendió prudente enmendar nuevamente la Ley Núm. 113, *supra*, con el propósito de eliminar la exención contributiva previamente otorgada a las compañías dedicadas a la compraventa de crudo y sus derivados. Así, mediante la Ley Núm. 126-2005, el legislador explicó en su

---

[14] Posteriormente, por virtud de la Ley Núm. 130-2001, la Asamblea Legislativa aclaró lo dispuesto en la Ley Núm. 350-1999 y dispuso que dicha enmienda no tenía efecto retroactivo. Por tanto, aquellos municipios que hubiesen notificado deficiencia en el pago de patentes municipales conforme a la ley y previo a la vigencia de la Ley Núm. 350-1999, tenían pleno derecho a cobrar lo adeudado.

Exposición de Motivos que con la eliminación de la exención contributiva a este tipo de compañía se le hacía justicia a los municipios que habían experimentado una reducción en sus ingresos por concepto de patentes municipales. Como fundamento adicional explicó que dichas compañías no aportaban empleos directos ni redundaban en ningún tipo de beneficio a la ciudadanía que hubiera sido evidenciado contundentemente. *Íd.*

Actualmente, la sección pertinente de la Ley Núm. 113, *supra*, lee como sigue:

> Se exime del pago de las patentes municipales por autorización de las disposiciones de las secs. 651 a 652y de este título a:
>
> ...
>
> (31) Exclusivamente el ingreso derivado de la actividad de exportación generada de empresas localizadas en una Zona de Comercio Exterior, incluyendo el ingreso que generen los productos utilizados en el proceso de manufactura, mezcla o embalaje realizado dentro de la zona, establecida conforme a lo dispuesto en el Acta de Zonas de Comercio Exterior de 1934 (19 U.S.C. 819a), por una entidad incorporada bajo las leyes del Gobierno de Puerto Rico o por una compañía autorizada a hacer negocios en Puerto Rico, **excluyendo a las compañías dedicadas a la compra y venta de crudo y sus derivados,** cuyas operaciones se lleven a cabo a tenor con lo dispuesto en el Acta de Zonas de Comercio Exterior, *supra*. 21 LPRA sec. 651h(31) (Énfasis nuestro).

De lo anterior se desprende diáfanamente que, a pesar de que por un periodo de tiempo se entendió apropiado como política pública, la Asamblea Legislativa optó por específicamente excluir a las compañías dedicadas a la compraventa de petróleo y sus derivados de la exención

contributiva provista para las compañías que operan dentro de las Zonas de Comercio Exterior. Sin embargo, ello no significa que automáticamente una compañía que se dedica a este negocio deba pagar patentes municipales, pues, como ya discutimos, ello dependerá del nexo que la compañía tiene con el municipio que pretende imponer la contribución y el tratamiento que la Ley Núm. 113, *supra*, le otorga a ese tipo de negocio a la hora de determinar el volumen de negocios atribuible a las operaciones realizadas en un municipio en particular.

## III

En el recurso ante nuestra consideración, el Municipio argumenta, en esencia, que la norma de *Lever Bros. Export Corp. v. Alcalde S.J.*, *supra*, en cuanto al requisito de que una compañía debe tener una oficina o establecimiento comercial dedicado con fines de lucro en el municipio impositor se trata de una norma general que no tiene cabida en la controversia de autos. A su vez, alega que la Ley Núm. 113, *supra*, y su historial legislativo apuntan a que existe una excepción al requisito de tener una oficina o establecimiento comercial para casos de compraventas de productos derivados del petróleo a la AEE. Relacionado con lo anterior, aduce además que el factor determinante al momento de determinar si procede la imposición de patentes municipales es si el evento económico que genera el ingreso ocurrió dentro de la jurisdicción territorial municipal, requisito que

entienden satisfecho por el hecho de que Lukoil entregó los productos vendidos a la AEE en un muelle ubicado en el Municipio. No le asiste la razón. Veamos por qué.

En cuanto a los primeros dos (2) señalamientos de error, el Municipio, mediante una extensa y muy creativa argumentación, nos invita a acoger su postura de que el requisito presencial que establecimos en *Lever Bros. Export Corp. v. Alcalde S.J.*, *supra*, únicamente aplica a aquellos negocios que estén cubiertos bajo la definición general de *volumen de negocios* de la Ley Núm. 113, *supra*. Específicamente, el Municipio alega que, por tratarse de una venta, no le aplica la definición general de *volumen de negocios* de la Ley Núm. 113, *supra*, sino que le aplica la disposición específica que la misma ley establece para el caso de ventas de bienes. Sostiene su argumento basándose en jurisprudencia de este Tribunal en donde se acudió a una de las definiciones especiales de volumen de negocios para determinar si un municipio tenía autoridad para imponer patentes municipales.[15]

---

[15] Por ejemplo, en *Royal Bank v. Mun. de San Juan*, 154 DPR 383 (2001), acudimos a la disposición pertinente de la Ley Núm. 113, *supra*, para determinar cómo se computa el volumen de negocios de un negocio financiero.

Igualmente, en *Mun. Trujillo Alto v. Cable TV*, 132 DPR 1008 (1993), hicimos lo propio con el propósito de determinar cómo se calcula el volumen de negocios en el caso de una compañía que provee servicios de Cable TV. Valga destacar que en este último caso resolvimos que el Municipio de Trujillo Alto no podía imponer patentes municipales por los servicios de Cable TV provistos dentro de su demarcación territorial, pues en ese entonces la ley exigía que este tipo de compañía únicamente tributaba donde mantuviese sus oficinas. Sin embargo, Luego de la aprobación de la Ley Núm. 23-1996, se autorizó a los municipios a cobrar patentes municipales tomando como base lo facturado a los suscriptores de cada municipio. Véase la nota al calce número 18 de esta Opinión, *infra*.

Si bien es cierto lo que alega el Municipio a los efectos de que la Ley Núm. 113, *supra*, provee diferentes maneras para calcular el volumen de negocios tributable según el tipo de negocio del que se trate, también es cierto que **en todas esas definiciones está contemplado que el contribuyente tenga presencia física en algún municipio. Lo que varía, según el tipo de negocio que el contribuyente lleve a cabo, es cómo habrá de computarse el volumen de negocios y a cuáles municipios -en  los cuales el contribuyente tenga presencia física- habrá de pagar la patente municipal**, esto último según el principio de prorrateo que permea la Ley Núm. 113.

Por otro lado, **en todos los casos anteriores en donde hemos aplicado dicha norma no estaba en controversia si las compañías que impugnaban el cobro de las patentes municipales tenían presencia física en alguna jurisdicción municipal** de Puerto Rico. *A contrario sensu*, en la controversia que hoy atendemos quien impugna el cobro de la patente municipal es una compañía foránea, sin oficinas, establecimientos comerciales, almacenes o presencia física alguna en Puerto Rico —lo cual, ciertamente, implica que tampoco se encuentra presente en el Municipio. A pesar de lo anterior, el Municipio alega que procede la imposición y cobro de patentes municipales por el único hecho de que el combustible vendido por Lukoil y comprado por la AEE, transacción que fue llevada a cabo en todo momento desde las oficinas de la primera en

Nueva York, fue entregado en un muelle ubicado en el

Municipio.[16] No obstante, además de que no se cumple con el

requisito presencial, difícilmente podríamos concluir que

---

[16] La actuación del Municipio en este caso, y la teoría esbozada en la Opinión Disidente del Juez Asociado señor Estrella Martínez, podría tener implicaciones legales adicionales ante el hecho de que Lukoil es una compañía foránea sin presencia física u operación alguna en Puerto Rico. En *E.L.A. v. Northwestern Selecta*, 185 DPR 40 (2012), por primera vez reconocimos que la Cláusula de Comercio –en su estado durmiente– de la Constitución de los Estados Unidos aplica a Puerto Rico *ex proprio vigore*. En cuanto a los límites que impone dicha disposición constitucional, el Tribunal Supremo de los Estados Unidos ha resuelto que deben cumplirse cuatro (4) requisitos para que los tribunales puedan validar la imposición de contribuciones dentro del comercio interestatal: (1) que exista un nexo sustancial entre la actividad sujeta a la contribución y el estado que la impone; (2) que la contribución esté distribuida equitativamente; (3) que la contribución en cuestión no discrimine contra el comercio interestatal, y (4) que la contribución esté relacionada apropiadamente con los servicios provistos por el estado. *Íd.*, pág. 75 (Citando a *Complete Auto Transit, Inc. v. Brady*, 430 US 274, 279 (1977)). En cuanto al primer requisito y la necesidad de presencia física en el estado impositor, *véase Quill Corp. v. North Dakota*, 504 US 298 (1992).

No obstante y a pesar de que ello forma parte de las defensas de Lukoil en este caso, estamos impedidos de utilizar esa vía para resolver la controversia de autos por motivos de autolimitación judicial. Como es sabido, "los tribunales no debemos entrar a considerar la constitucionalidad o inconstitucionalidad de una ley o de una actuación a menos que ello sea imprescindible y que la controversia bajo consideración no pueda ser adjudicada por otros fundamentos". *Pueblo v. Yip Berrios*, 142 DPR 386, 421 (1997) (Citas omitidas). En este caso, la Ley Núm. 113, *supra*, es suficiente para resolver la controversia.

La disidencia en este caso despacha la aplicación del asunto constitucional en una nota al calce, a pesar de que su teoría choca de frente con la doctrina de la Cláusula de Comercio en su estado durmiente. En ese sentido, cuestiona la aplicación del precedente claro en el tema resuelto por el Tribunal Supremo federal en *Quill Corp*, *supra*. Para ello, hace una referencia al caso de *Koch Fuels, Inc. v. Clark*, 676 A2d. 330 (1996). Sin embargo, el propio caso de *Koch Fuels, supra,* reconoce y aplica el precedente de *Quill Corp., supra*. ("**Although we do not dispute the applicability of *Quill Corp.* to the instant case**, we are not persuaded by Koch's contentions that it did not maintain a physical presence in the state." *Koch Fuels*, *supra*, pág. 333)(Énfasis suplido).

Para colmo, en el caso de *Koch Fuels*, *supra*, el Tribunal Supremo de Rhode Island explicó su conclusión en cuanto a que el impuesto era válido al expresar que "we are of the opinion that **Koch's activities created in practical effect a physical presence within this state**." Id. pág. 334 (Énfasis suplido). Por ello es errada la expresión de la disidencia en su escolio 17 en cuanto a que en *Koch Fuels*, *supra*, se validó un impuesto a una corporación que no tenía presencia física en el estado. En ese sentido el propio caso citado por la disidencia llega a la misma conclusión de esta Opinión: la corporación a la que se le cobra el tributo tiene presencia física en el estado impositor.

la entrega de un producto en un muelle sea un evento económico sustancial que sirva como base suficiente para que un municipio pueda imponer patentes municipales sobre una transacción comercial.

Finalmente, tampoco nos convence el argumento esbozado por el Municipio en su tercer señalamiento de error a los efectos de que el historial legislativo de la Ley Núm. 113, *supra*, demuestra que los municipios están facultados para imponer contribuciones por el volumen de negocios derivado de la compraventa de productos derivados del petróleo, aun en casos en que la compañía no tenga presencia física en el municipio impositor.[17] Aunque es cierto que desde el año 2005 en adelante la Ley Núm. 113, *supra*, no contiene exención contributiva alguna para este tipo de negocio, ello no implica que el Municipio esté facultado a cobrar patentes municipales por el mero hecho de que recibió los productos vendidos en su muelle. Según ya discutimos, no se trata de una prohibición de cobrar patentes municipales por la venta de productos derivados

---

[17] Al argumentar a favor de su contención, el Municipio utiliza una Sentencia del Tribunal de Apelaciones donde ese foro llegó a un resultado distinto al del presente caso. En *Vitol S.A., Inc. v. Municipio de Guayanilla*, KLCE0100543, al igual que en la controversia de autos, se trataba de una compañía foránea que alegaba no tener presencia física en Puerto Rico y que fue objeto de una imposición de patentes municipales por el Municipio de Guayanilla, por el hecho de haber entregado el combustible vendido en el muelle de Costa Sur. Sin embargo, la controversia ante la consideración del Tribunal de Apelaciones era si el Tribunal de Primera Instancia había actuado correctamente al denegar la Moción de Sentencia Sumaria presentada por la compañía en cuestión. En ese caso, el foro apelativo intermedio se limitó a confirmar la denegatoria emitida por el foro primario, pues entendió que habían controversias de hechos relacionados a las operaciones de Vitol en Puerto Rico que ameritaban ser dilucidadas mediante juicio plenario.

del petróleo a la AEE. De lo que se trata es que para que el Municipio pueda imponer el tributo, se tienen que cumplir con los requisitos que por más de una década hemos reiterado desde que resolvimos *Lever Bros. Export Corp. v. Alcalde S.J.*, *supra*.

Por todo lo anterior, resolvemos que no existe una excepción a la norma de presencia física que expusimos por primera vez en *Lever Bros. Export Corp. v. Alcalde S.J.*, *supra*. [18] Por lo tanto, independientemente del tipo de negocio que se trate, **como cuestión de umbral la Ley Núm. 113,** *supra*, **exige que una persona tenga presencia física**, ya sea a través de oficinas, establecimientos comerciales, almacenes o cualquier otro tipo de organización de industria o negocio en el municipio que pretenda imponer patentes municipales por la actividad económica generada dentro de su demarcación territorial. Además de tener presencia física, se requiere que por medio de ella se efectúen actividades con fines de lucro en el municipio impositor. Solo luego de haber cumplido con lo anterior es

---

[18] En su alegato, Lukoil argumenta que la Sec. 3 de la Ley Núm. 116, 21 LPRA sec. 651b, establece una excepción al requisito de presencia física para el caso de los contratos de concesiones entre la Autoridad de Carreteras y Transportación y concesionarios privados. Entendemos que esta aseveración no es correcta, pues en estos contratos la propia carretera administrada –en aquellos casos en que la misma transcurra por más de un municipio– es suficiente para cumplir con el requisito presencial que permea el estatuto. Lo que atiende la disposición citada es cómo habrá de prorratearse la patente municipal entre cada municipio donde atraviesa una carretera objeto de este tipo de contrato. Una situación similar ocurre en el caso de las compañías que proveen servicio de Cable TV, pues estas tienen presencia física a través de la infraestructura particular necesaria para llevar a cabo ese tipo de negocio. Por otro lado, nótese que en ambos casos, independientemente del tratamiento particular que se le da a estas compañías a la hora de determinar su volumen de negocios y a cuáles municipios deben pagar patentes municipales, se trata de negocios que tienen presencia física en Puerto Rico.

que se debe acudir a la definición de *volumen de negocios* aplicable, según sea el caso, para determinar cuál será la base tributable y cómo se habrá de calcular la imposición de las patentes municipales.

Así las cosas, el Tribunal de Apelaciones actuó conforme a Derecho al confirmar el dictamen del Tribunal de Primera Instancia. No procede la imposición y el cobro de patentes municipales en este caso.

IV

Por los fundamentos que anteceden, confirmamos la Sentencia emitida por el Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Lukoil Pan Americas, LLC<br><br>    Recurrida<br><br>       v.<br><br>Municipio de Guayanilla<br><br>    Peticionario | AC-2013-0109 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 10 de abril de 2015.

Por los fundamentos que anteceden, confirmamos la Sentencia emitida por el Tribunal de Apelaciones.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez y la Jueza Asociada Oronoz Rodríguez concurrieron con el resultado sin opinión escrita. El Juez Asociado señor Estrella Martínez emitió una Opinión Disidente a la que se unió la Jueza Presidenta señora Fiol Matta.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Lukoil Pan Americas, LLC

    Recurrida

    v.                          AC-2013-109

Municipio de Guayanilla

    Peticionario


Opinión disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ a la cual se une la Jueza Presidenta SEÑORA FIOL MATTA

San Juan, Puerto Rico, a 10 de abril de 2015.

La Mayoría de este Tribunal pauta que la Ley de Patentes Municipales, *infra*, requiere indefectiblemente la presencia física en el municipio impositor como condición para imponer patentes municipales. Con ello, abandonan la norma firmemente arraigada de que el factor determinante es que el ingreso se produzca como consecuencia de los negocios que la persona, natural o jurídica, desempeña en el municipio, lo cual implica que el ingreso no hubiese sido generado a no ser por las operaciones llevadas a cabo allí. Más aún, afirman que no existe una excepción a la norma de presencia física para que proceda la imposición del tributo.

Como las patentes municipales nacen debido a que se produce **un negocio que genera un ingreso producto de las operaciones llevadas dentro del territorio del municipio con o sin locales comerciales**, y ya que la determinación que hoy alcanza la Mayoría de este Tribunal contraviene la política pública enmarcada en la Ley de Patentes Municipales, nos corresponde disentir.

I

El caso de autos tiene su génesis en la adquisición de combustible por la Autoridad de Energía Eléctrica (AEE). El referido combustible fue adquirido por la AEE de Lukoil Pan Americas, LLC (Lukoil). Ésta última no tiene oficinas, empleados ni almacenes en Puerto Rico y las gestiones de compra y despacho del combustible se hicieron a través de sus oficinas en Nueva York. No obstante, para la entrega del crudo se utilizaron las facilidades del puerto del Municipio de Guayanilla. Como consecuencia, el Municipio de Guayanilla solicitó el pago de patentes a Lukoil y ésta las impugnó.

Trabado el trámite, Lukoil solicitó que se dictara sentencia por las alegaciones y desestimara la demanda para el cobro de patentes municipales del Municipio de Guayanilla. En síntesis, Lukoil adujo la improcedencia del pago de patentes municipales por razón de que no tiene oficina, establecimiento comercial o presencia física en el Municipio; tampoco prestó servicios ni incurrió en

negocios en ninguna oficina o establecimiento comercial, y no almacenó el combustible dentro de Puerto Rico.

El Municipio de Guayanilla se opuso y sostuvo la deficiencia notificada. Señaló que Lukoil incurrió en un evento económico que generó ingreso dentro de su demarcación territorial. De esta forma, argumentó que la imposición de patentes municipales no requiere, en todos los casos, la presencia física para que ésta proceda y basta que el ingreso se genere como consecuencia de las operaciones llevadas a cabo en el municipio. Así, el Municipio de Guayanilla sostuvo que Lukoil utilizó como base de traspaso el puerto ubicado en su jurisdicción municipal.

El Tribunal de Primera Instancia, mediante Sentencia de 11 de octubre de 2012, declaró ha lugar la moción para dictar sentencia por las alegaciones a favor de Lukoil y desestimó la demanda presentada por el Municipio en contra de ésta. Concluyó que para que proceda la imposición de la patente municipal era necesaria la presencia física del comerciante o profesional en el municipio.

Inconforme, el Municipio de Guayanilla acudió ante el Tribunal de Apelaciones. El 29 de agosto de 2013 el foro apelativo intermedio emitió Sentencia en la que confirmó la determinación del Tribunal de Primera Instancia. En desacuerdo, el Municipio de Guayanilla acude ante este Tribunal y plantea que es errada la conclusión de que para imponer la contribución de patentes

municipales se requiera la presencia física en el municipio. Arguye que el factor determinante es si el evento económico que generó el ingreso ocurrió dentro de su límite territorial. Por su parte, Lukoil sostiene que es necesaria la presencia física y que podría haber un conflicto con la Cláusula de Comercio de la Constitución de los Estados Unidos en su estado durmiente.

Este Tribunal expidió el recurso y las partes presentaron sus respectivos alegatos.

I

A.

Como es sabido, el poder de los municipios para imponer contribuciones surge por delegación de la Asamblea Legislativa con la intención de lograr que los municipios le pudieran proveer más servicios directos a la ciudadanía. El Día, Inc. v. Mun. de Guaynabo, 187 DPR 811, 818 (2013); Café Rico, Inc. v. Mun. de Mayagüez, 155 DPR 548, 559 (2001); FDIC v. Mun. San Juan, 134 DPR 385, 392 (1993). Para lograr ese objetivo, la Asamblea Legislativa aprobó la Ley de Patentes Municipales, Ley Núm. 113 de 10 de julio de 1974, 21 LPRA sec. 651, *et seq.* Mediante ésta se permite a los municipios imponer una contribución a "toda persona dedicada con fines de lucro a la prestación de cualquier servicio, a la venta de cualquier bien a cualquier negocio financiero o cualquier negocio en los municipios…". 21 LPRA sec. 651a (16). De esta forma, se amplió "el número de industrias o

negocios con fines de lucro sujetos a tributación". American Express Co. v. Mun. de San Juan, 120 DPR 339, 346 (1988).

Igualmente, la política pública enunciada propulsó una tendencia, en materia de patentes municipales, a favorecer una interpretación amplia del poder impositivo de los municipios. Pfizer Pharm. v. Mun. Vega Baja, 182 DPR 267, 287 (2011); Café Rico, Inc. v. Mun. de Mayagüez, *supra*, pág. 553; Royal Bank v. Mun. de San Juan, 154 DPR 383, 388 (2001); Lever Bros. Export Corp. v. Alcalde S.J., 140 DPR 152, 158 (1996). Véase, Molinos de P.R. v. Municipio de Guaynabo, 105 DPR 470, 474 (1976).

Cónsono con esa visión, los municipios adquirieron una nueva dimensión de autonomía y responsabilidad que procura proveerles las herramientas necesarias para atender directamente las necesidades de la ciudadanía propiciando el desarrollo urbano, social y económico. Véase, Art. 1.002 de la Ley de Municipios Autónomos de Puerto Rico de 1991, Ley Núm. 81-1991, 21 LPRA sec. 4001 n.; Rivera Fernández v. Mun. Carolina, 190 DPR 196, 205 (2014). Tan es así, que la Ley de Municipios Autónomos, *supra*, dispone que "[l]os poderes y facultades conferidos a los municipios… se interpretarán liberalmente… de forma tal que se propicie el desarrollo e implantación de la política pública enunciada… de garantizar a los

municipios [las] facultades necesarias en el orden jurídico, fiscal y administrativo". 21 LPRA sec. 4002.[19]

B.

Con esa finalidad, la Ley de Patentes Municipales dispone la autoridad de los municipios para imponer patentes al establecer sobre qué actividad recaen las mismas, la base sobre la cual se calcula y el municipio acreedor a éstas, de acuerdo a circunstancias particulares.

En cuanto al tipo de actividad y quién debe pagar el impuesto, la Ley de Patentes Municipales establece que se autoriza a las legislaturas municipales a imponer y cobrar patentes a:

> "[t]oda persona dedicada a la prestación de cualquier servicio, o a la venta de cualquier bien, negocio financiero o cualquier industria o negocio". 21 LPRA sec. 651b.

Disposición similar se encuentra al referirse a las industrias y negocios sujetos a patentes al establecer que estarán sujetas al pago de patentes:

> "[t]oda persona dedicada con fines de lucro a la prestación de cualquier bien, a cualquier negocio financiero o a cualquier industria o negocio". 21 LPRA sec. 651c.

A poco se examinen las disposiciones citadas, resalta que éstas no contienen disposición o condicionan la autoridad municipal a que la operación de negocio sea

---

[19] De igual forma, se promulgó la Ley Núm. 82 de 30 de agosto de 1981 para enmendar la Ley Núm. 113 de Patentes Municipales a los fines de fortalecer e incrementar la base fiscal de todos los municipios.

mediante una oficina, sucursal, almacén u otro tipo de organización. Por el contrario, al interpretar el lenguaje estatutario citado, este Tribunal no ha vacilado en señalar que "la autoridad concedida a los municipios es amplia" y "la utilización de las palabras 'toda persona', 'cualquier servicio', 'cualquier industria o negocio' **no permiten que se le dé una interpretación restrictiva**". (Énfasis suplido). Arecibo Bldg. Corp v. Mun. de Arecibo, 115 DPR 76, 78 (1984) (*Per Curiam*). Véase, además, American Express Co. v. Mun. de San Juan, *supra*, págs. 346-347, citando al Informe de la Comisión de Hacienda de la Cámara de Representantes de 20 de junio de 1974, pág. 2. Como corolario, no debe existir duda de que las actividades sobre las cuales procede el pago de patentes municipales es una amplia y no está limitada a las empresas específicamente identificadas por la Ley de Patentes Municipales. American Express Co. v. Mun. de San Juan, *supra*, pág. 349.

Claro está, el gravamen impuesto requiere que la operación de negocio se beneficie de la organización local para efectuar sus actividades de interés pecuniario, y por tal razón deben contribuir al sostenimiento de éstas. Mun. Utuado v. Aireko Const. Corp., 176 DPR 897, 904 (2009). Como consecuencia de tal realidad, hemos establecido reiteradamente que el "**factor determinante es que el ingreso se produzca como consecuencia de los negocios que** la persona, natural o

jurídica, **desempeña en el municipio, lo cual implica que el ingreso no hubiese sido generado a no ser por las operaciones llevadas a cabo allí**". (Énfasis suplido). El Día, Inc. v. Mun. de Guaynabo, *supra*, pág. 819; Pfizer Pharm. v. Mun. de Vega Baja, *supra*, pág. 289; Lever Bros. Export Corp. v. Alcalde S.J., *supra*, pág. 161; The Coca Cola Co. v. Mun. de Carolina, 136 DPR 216, 221 (1994).

C.

Una vez establecida la liberalidad del tipo de actividades sobre las cuales procede el gravamen, y el fundamento de que éstas proceden por el beneficio que se obtiene del lugar donde se lleva a cabo la actividad que genera ingreso, debemos establecer que la base para calcularlo está definida en la propia Ley de Patentes Municipales.

Cónsono con el objetivo de abarcar la mayor cantidad de actividades y propiciar una autonomía fiscal para los municipios, la Ley de Patentes Municipales estableció una base amplia que consistió en el "**volumen de negocios atribuibles a las operaciones en el municipio**". (Énfasis suplido). 21 LPRA sec. 651d.[20] Este concepto está definido en el estatuto al disponer que "atribuible a la operación" significará:

---

[20]En esta sección se establecen distintos por cientos dependiendo del tipo de negocio llevado a cabo. Incluso, se autoriza al municipio la imposición de tasas inferiores y hasta exonerar con el fin de incentivar la actividad económica en su demarcación territorial.

> [l]a totalidad de **los ingresos derivados dentro y fuera de Puerto Rico que reciba o devenga una persona relacionada con la explotación de una industria o negocio en Puerto Rico**, tales como, pero no limitado a intereses sobre inversiones, pagarés u otras obligaciones excluyendo los intereses exentos según definidos en la sec. 651h de este título, así como los dividendos o beneficios recibidos por dicha persona. (Énfasis suplido). 21 LPRA sec. 651a (15).[21]

Examinada la definición antes citada, resalta el hecho de que tal frase no alude, contempla o requiere que el contribuyente "tenga presencia física en algún municipio", para que proceda la imposición de patentes municipales.[22] Lo único que la Ley de Patentes Municipales instituyó como criterio para el cómputo de la patente es el que la actividad comercial haya producido ingresos por el aprovechamiento de la industria o negocio en Puerto Rico. Para ello, no es indispensable que exista un establecimiento u organización comercial. A modo de ejemplo, hemos determinado que procede el pago de patentes por los intereses devengados por el uso de tarjetas de crédito, aún cuando éstas no tengan una oficina, almacén o sucursal en Puerto Rico. Véase, American Express Co. v. Mun. de San Juan, *supra*.

Ahora bien, el "volumen de negocios" representa la base sobre la cual se calcula el tributo a pagarse. El

---

[21] Por tal razón, se imponen patentes municipales a los ingresos recibidos en Puerto Rico, ya sean éstos derivados de fuentes fuera de la demarcación territorial. Sears Roebuck de P.R. v. Mun. de San Juan, 122 DPR 26, 29 (1988); Banco Popular v. Mun. de Mayagüez, 120 DPR 692, 700-701 (1988) (*Per Curiam*).

[22] Véase, Opinión mayoritaria, pág. 26.

legislador concibió múltiples instancias para determinar el "volumen de negocios" de acuerdo con la naturaleza de las distintas operaciones de negocios. Asimismo, instituyó una norma general. Esa norma general dispone que el "volumen de negocios" lo constituyen los ingresos brutos que se reciban o devenguen de: (1) la prestación de cualquier servicio; (2) la venta de cualquier bien; y (3) la actividad de cualquier otra industria o negocio en el municipio donde la casa principal realiza sus operaciones o los que ésta devengue donde mantenga oficinas, almacenes, sucursales, plantas de manufactura, envase, embotellado, procesamiento, elaboración, confección, ensamblaje, extracción lugar de construcción, o cualquier otro tipo de organización industria o negocio para realizar negocios a su nombre. 21 LPRA sec. 651a (a)(7)(A)(i).[23] Sin embargo, ello no impone una exigencia de que la casa principal esté físicamente en Puerto Rico, pues ésta puede ser una entidad matriz que no requiere necesariamente de un espacio comercial para efectuar,

---

[23] Nótese que la definición de "ingreso bruto" incorpora parte del lenguaje de lo que constituye "atribuible a la operación" al establecer que éste "significa la totalidad de los ingresos dentro y fuera de Puerto Rico que sean atribuibles a la operación que se lleva a cabo en cada municipio, excluyendo todos los ingresos, tales como interés y dividendos provenientes de la inversión por un individuo de sus propios fondos, de la posesión de acciones corporativas u otros instrumentos de inversión". 21 LPRA sec. 651a (a)(7)(A)(ii).

realizar o ejecutar una acción.[24] El factor determinante es que ésta obtenga un ingreso por las operaciones llevadas a cabo en el municipio.

Asimismo, el legislador contempló distintas actividades comerciales y determinó cuál sería el "volumen de negocios" para cada una de las siguientes: (1) los negocios financieros; (2) los comisionistas, agentes representantes y contratistas; (3) los servicios de comunicación; (4) las estaciones de gasolina y; (5) las ventas de tiendas, casas de comercio y otras industrias o negocios. 21 LPRA sec. 651a (a)(7)(A),(B),(C) y (D).

En lo particular al caso ante nos, el "volumen de negocios" de ventas de tiendas, casas de comercio **u otras industrias o negocios** será: (1) el importe de las ventas brutas menos las devoluciones; (2) el valor de los fletes y pasajes en cada oficina en cada municipio; tratándose de vehículo para transporte terrestre y; en general (3) **"el montante de las entradas recibidas o devengadas por cualquier industria o negocio de acuerdo con la naturaleza de la industria o el negocio"**. (Énfasis suplido). 21 LPRA sec. 651a (a)(7)(D).

En fin, el cómputo de la patente constituye un impuesto que va a variar según el "volumen de negocios"

---

[24] La Ley de Patentes Municipales define "casa principal" como la entidad matriz que controla las sucursales, los almacenes y oficinas. 21 LPRA sec. 651a (14).

de los ingresos "atribuibles a la operación del negocio" en el municipio de acuerdo con el tipo de industria llevada a cabo. Ello, incluirá y no se limitará a los ingresos devengados de fuentes fuera o dentro de Puerto Rico. En consecuencia, la operación de una actividad comercial no impone -en todo caso- la necesidad de un establecimiento físico. Así, habrá operaciones comerciales de servicio o venta que no tendrán un local o establecimiento comercial y devengarán un ingreso bruto sujeto a tributación, ya que el factor determinante para que proceda el gravamen sobre el ingreso es que éste se produzca como consecuencia de la actividad llevada en el municipio.[25] Nada en el estatuto refleja que la Ley de Patentes Municipales está cimentada exclusivamente en la existencia de una oficina o local de negocios en el municipio impositor. Por el contrario, éste abarca un sinfín de actividades y circunstancias en miras de ampliar la facultad impositiva del municipio, cuyo único requisito es que genere ingresos como consecuencia de la actividad comercial llevada a cabo allí.

---

[25]A pesar de que la mayoría de este Tribunal reconoce que en el pasado hemos determinado y reafirmado que "el factor determinante es que el ingreso se produzca como consecuencia de los negocios que la persona natural o jurídica, desempeña en el municipio, lo cual implica que el ingreso no hubiese sido generado a no ser por las operaciones llevadas a cabo allí", Véase, Opinión mayoritaria, pág. 14, ahora lo descarta e impone -sin excepción alguna- que para que proceda el tributo es indispensable que haya un establecimiento comercial u oficina dedicada para la prestación de cualquier servicio.

Ciertamente, la Mayoría de este Tribunal expone correctamente que la Ley de Patentes Municipales consideró cuál municipio sería acreedor del pago de patentes municipales a los fines de cumplir con el principio de prorrateo. Al así hacerlo, el segundo párrafo de la Sección 3 de la Ley de Patentes Municipales, 21 LPRA sec. 651b, calificó varias situaciones en las que procedía dilucidar cuál municipio es acreedor de la patente municipal **en aquellas instancias o situaciones en donde existen presencia física en varios municipios.** Ninguna de estas circunstancias están presentes en los hechos ante nos.

La primera de éstas, cuando se trate de personas con oficinas o almacenes separados y distintos a cualquier otra industria o negocio en la oficina o casa principal, en cuyo caso el pago de patentes municipales será separadamente. La segunda situación, cuando sean industrias o negocios que se tengan tanto en la casa principal, así como en cualquier sucursales y almacén de aquéllas, en el mismo municipio, en cuyo caso se pagará la patente únicamente en la casa principal sobre la base de todas las sucursales y almacenes. Por último, la tercera circunstancia, cuando se refiera a industrias o negocios con oficina principal en determinado municipio y manteniendo otras organizaciones de industrias o negocio, oficina, sucursales o almacenes haciendo negocios en otros municipios que no sea donde radica la casa

principal, la patente debe ser impuesta por cada municipio donde la casa principal mantenga oficinas, sucursales, almacenes u otras organizaciones de industria o negocio a base del volumen de negocio realizado a nombre de la casa principal en dicho municipio. Íd.

D.

Este Tribunal ha aplicado acertadamente el principio de prorrateo exigido en la ley al acreditar el pago de patentes municipales a aquellos municipios en los que la actividad económica se materializa en su respectiva jurisdicción geográfica. El Día, Inc. v. Mun. de Guaynabo, *supra*, págs. 819-820.

Como consecuencia, en Lever Bros. Export Corp. v. Alcalde S.J., *supra*, este Tribunal determinó que para que proceda el tributo debían concurrir dos requisitos: (1) la presencia de un establecimiento comercial u oficina dedicada con fines de lucro a la prestación de cualquier servicio en el municipio correspondiente; y (2) la existencia de una base sobre la cual se impondría el impuesto. Íd. Sin embargo, no le impartimos la fuerza para sostener que lo resuelto en Lever Bros. Export Corp. v. Alcalde S.J., *supra*, implica -**sin excepción**- la necesidad de que exista una presencia física para que proceda la imposición de patentes municipales. Véase, Opinión mayoritaria, pág. 28.[26]

---

[26]En los casos de instituciones bancarias o negocios financieros advertimos que el primer criterio elaborado

No podemos olvidar -como bien puntualiza la Mayoría de este Tribunal- que en los casos dilucidados por este Tribunal no estaba en controversia si las compañías que impugnaban el cobro de patentes municipales tenían presencia física en el municipio. Mucho menos podemos ignorar que incluso en Lever Bros. Export Corp. v. Alcalde S.J., *supra*, reafirmamos que el factor determinante es **si el ingreso se produce como consecuencia de los negocios en el municipio**, lo que implica que el ingreso no se hubiese generado a no ser por las actividades llevadas a cabo en el municipio. Íd., pág. 161. A su vez, reafirmamos que la patente municipal deberá hacerse sobre el volumen de negocio atribuible a la prestación de algún servicio, industria o negocio que se lleve a cabo en el municipio. Íd. Inclusive, luego de resuelto Lever Bros. Export Corp. v. Alcalde S.J., *supra*, este Tribunal ha reiterado que "**el factor determinante será si el evento económico o la fuente del negocio que**

---

en Lever Bros. Export Corp. v. Alcalde S.J., *supra*, exige que la empresa o negocio sea un negocio financiero dedicado con fines de lucro a servicios y transacciones en el municipio correspondiente. Royal Bank v. Mun. de San Juan, 154 DPR 383, 398 (2001). Ello no necesariamente implica que exista la presencia física del negocio financiero en el municipio para la referida imposición. Máxime con los desarrollos tecnológicos existentes. Véase, a tales efectos, American Express Co. v. Mun. de San Juan, 120 DPR 339 (1988). La presencia física tampoco es determinante para que proceda la acreencia del gravamen municipal. A modo de ejemplo, cuando se trata de una sucursal bancaria que no recibe depósitos, se exime del pago de patentes. Véase, First Bank de P.R. v. Mun. de Aguadilla, 153 DPR 198, 205-207 (2001); 21 LPRA sec. 651a (a)(7)(B).

**genera el ingreso están dentro o fuera de la municipalidad**; es decir, si el evento económico "**ocurre o se ejecuta dentro de la demarcación geográfica del Municipio**". (Énfasis nuestro). El Día, Inc. v. Mun. de Guaynabo, *supra*, págs. 819-820, 823;[27] Pfizer Pharm. v. Mun. de Vega Baja, *supra*, págs. 288-290; First Bank de P.R. v. Mun. de Aguadilla, *supra*, pág. 204.

Ante tal realidad, es mi criterio que la normativa jurídica pautada en Lever Bros. Export Corp. v. Alcalde S.J., *supra*, no es óbice para obligar al pago de patentes municipales cuando una industria o negocio no tenga un establecimiento comercial de algún tipo en el municipio, pero se beneficia de la organización local o territorial de éste para efectuar sus actividades pecuniarias. Pfizer Pharm. v. Mun. de Vega Baja, *supra*, pág. 288; First Bank de P.R. v. Mun. de Aguadilla, *supra*, pág. 204, citando a Banco Popular v. Mun. de Mayagüez, *supra*, pág. 700. ¿Acaso no se puede generar ingresos sin tener una oficina, sucursal o almacén en un lugar? ¿Es ésta la

---

[27] En este caso, no procedía el pago de la patente municipal solicitada por tratarse de un servicio de comunicación en el que la Ley de Patentes Municipales requiere el pago de éstas a base del volumen de negocios de los servicios de comunicación en "**cada municipio donde mantenga oficinas**". 21 LPRA sec. 651a(a)(7)(G)iii. Allí, dispusimos que no se cumplía con ese requisito, debido a que la actividad de almacenamiento por la cual se pretendía cobrar patentes municipales no era esencial para el funcionamiento de la empresa, y además, el volumen de negocios respondía al recaudo de los servicios de comunicación y no existía ingreso alguno por el almacenamiento. El Día, Inc. v. Mun. de Guaynabo, *supra*, págs. 824-825.

única forma de hacer viable la operación de una actividad comercial? Entendemos que no. Requerir en todo momento la necesidad de un local de cualquier tipo para generar ingresos o realizar una operación de negocio equivaldría a adoptar una norma restrictiva en detrimento de la política pública de ampliar la facultad de los municipios para imponer contribuciones y un alejamiento del fin que persigue reconocer una autonomía fiscal en beneficio de los ciudadanos. Véase, El Día, Inc. v. Mun. de Guaynabo, *supra*, pág. 818 citando a Café Rico, Inc. v. Mun. de Mayagüez, *supra*, pág. 559; F.D.I.C. v. Mun. de San Juan, *supra*. Todo ello, en contravención a la norma de que en Puerto Rico, en el caso de patentes municipales, se favorece una interpretación amplia del poder impositivo delegado a los municipios. Café Rico, Inc. v. Mun. de Mayagüez, *supra*, pág. 553; Texas Co. (P.R.), Inc. v. Municipio, 81 DPR 499, 508 (1959).[28]

E.

Por último, abona a nuestra postura la realidad fáctica de que la Ley de Patentes Municipales obliga a imponer una responsabilidad tributaria a la prestación de

---

[28] Este razonamiento no es novel, la norma jurídica ya citada establece que procede el pago de patentes municipales por los intereses devengados en el caso de las tarjetas de crédito, aún cuando éstas no cuenten con una oficina, sucursal, almacén u otra organización de industria o negocio. Asimismo, con relación a ciertos servicios de comunicación que tampoco mantienen este tipo de local comercial se reconoce la obligación de pago de patentes municipales. Véanse, Mun. Trujillo Alto v. Cable TV, 132 DPR 1008 (1993); Ley 23-1996; American Express Co. v. Mun. de San Juan, *supra*.

algún servicio, la industria o el negocio que se lleve a cabo en el municipio, a menos que no le aplique alguna de las exenciones contempladas en la ley. Royal Bank v. Mun. de San Juan, 154 DPR 383,399 (2001). Éstas deben ser interpretadas restrictivamente; es decir, no se favorecen por ser privilegios excepcionales o gracias para negar el gravamen contributivo. Pfizer Pharm. v. Mun. de Vega Baja, *supra*, pág. 279; Café Rico, Inc. v. Mun. de Mayagüez, *supra*, pág. 559.

Cónsono con lo anterior, no existe dispensa alguna que aplique a la compra de crudo que imposibilite la carga contributiva en controversia. El recuento histórico demuestra que la Ley Núm. 131-1999 enmendó la Ley de Patentes Municipales para eximir del pago de patentes municipales el ingreso derivado de la exportación de empresas localizadas en la Zonas de Comercio Exterior de 1934, 19 USCA secs. 81a-81u, con el fin de fomentar una cultura de exportación en Puerto Rico.[29] Con ello, se aclaró el hecho de que los municipios sólo podrían cobrar patentes por la porción del volumen de negocios que fuera el resultado de ventas locales, pero no podría hacerlo sobre bienes en tránsito, almacenados o vendidos al

---

[29] El Municipio de Guayanilla queda ubicado en la Zona de Comercio Exterior que contemplaba el estatuto.

exterior.[30] Véase, Ponencia de la Oficina del Comisionado de Asuntos Municipales de 16 de junio de 1997 con relación al P. del S. 518.

Luego, la Ley Núm. 350-1999 especificó que las compañías dedicadas a la compra y venta de petróleo y sus derivados, cuyas operaciones se lleven en la zona de comercio, estarían incluidas en la exención del pago de patentes municipales sobre sus actividades de exportación. Además, la referida ley eximió del pago de patentes municipales el ingreso procedente de la venta de crudo y sus derivados a la Autoridad de Energía Eléctrica al existir una sub-zona de comercio extranjero en el área de la Commonwealth Oil Refining Company, Inc. (CORCO) ubicada en los municipios de Peñuelas y Guayanilla.[31]

Empero, a dos años de aprobadas las referidas exenciones, comenzó a cuestionarse la efectividad de éstas y el hecho de que no se alcanzó el propósito por el cual fueron creadas. La razón para ello consistió en que no redundó en un beneficio a la economía y que el efecto

---

[30] La exención aplicaba siempre que la mercancía permaneciera en y dentro de la zona de comercio exterior. La mercancía que fuera importada a los Estados Unidos, pagaría impuestos y aranceles al momento en que ésta era físicamente removida de la zona de comercio exterior y entrada al territorio aduanero de los Estados Unidos. Véase, Exposición de Motivos de la Ley Núm. 350-1999.

[31] En general, esas facilidades se utilizaban para almacenar, mezclar y analizar productos de petróleo y sus derivados. Véase, Exposición de Motivos de la Ley Núm. 350-1999.

real consistió en un aumento al incremento de las ganancias de las empresas privadas a costa del erario público. Véase, Informe del Senado de Puerto Rico sobre P. del S. 1520 de 13 de mayo de 2002, 3ra. Sesión Ordinaria, 14ta. Asamblea Legislativa.

En contestación a estas preocupaciones, se aprobó la Ley Núm. 126-2005 que **eliminó la exención del pago de patentes municipales a las compañías dedicadas a la compra y venta de crudo y sus derivados en la zona de comercio**. A su vez, suprimió la exención al ingreso procedente de la venta de crudo y sus derivados a la Autoridad de Energía Eléctrica. Durante el debate generado, la Asociación de Alcaldes de Puerto Rico advirtió que la exención no logró su propósito y "por el contrario, municipios como -Guayanilla y Peñuelas- que son gobiernos locales económicamente deprimidos- se privan de devengar unos ingresos que necesitan con apremio y justificadamente". Véase, Ponencia de 20 de junio de 2005 de la Asociación de Alcaldes de Puerto Rico sobre el P. de la C. 718 que se convirtió en la Ley Núm. 126-2005.[32]

Igualmente, el Alcalde del Municipio de Guayanilla señaló que el proyecto "trata de restablecer el cobro de

---

[32] Véanse, además, Informe de la Comisión de Asuntos Municipales de la Cámara de Representantes de 23 de junio de 2005 sobre el P. de la C. 718, 1ra. Sesión Ordinaria, 15ta. Asamblea Legislativa; Ponencia de 20 de junio de 2005 de la Federación de Alcaldes de Puerto Rico, Inc. sobre el P. de la C. 718.

una patente municipal sobre los ingresos de las ventas del petróleo y los productos derivados del petróleo en nuestro municipio que en el pasado se venía cobrando", y señaló que "[l]as cuantiosas ganancias que obtienen estas compañías se repatrían a su lugar de origen sin que se invierta de forma alguna en nuestra economía municipal o estatal. Si nuestros co-ciudadanos [sic] en el Municipio de Guayanilla han tenido que asumir la responsabilidad y los efectos ambientales que este tipo de operación por décadas ha causado, es justo y razonable que puedan obtener a cambio unas fuentes de ingresos suficientes para la realización de obras y mejoras permanentes que sí redundan en una mejor calidad de vida para nuestro pueblo".[33] Así, la exposición de motivos de la Ley Núm. 126-2005 especifica claramente que ésta responde a la necesidad de "hacer justicia a los municipios que han visto afectados sus ingresos por concepto de patentes, con la exención concedida a este tipo de compañía de crudo que no aporta empleos directos, así como tampoco redunda en ningún tipo de beneficio a la ciudadanía".

El marco expuesto, establece palmariamente que la Ley de Patentes Municipales fue enmendada para eliminar la exención a los negocios relacionados con la compra de petróleo por la AEE. Así, no existe exclusión alguna en cuanto a este tipo de transacción. Por tanto, para que

---

[33]Véase, Ponencia de 21 de junio de 2005 del Alcalde del Municipio de Guayanilla, Hon. Edgardo Arlequín Vélez, sobre el P. de la C. 718.

las patentes municipales procedan lo determinante es si Lukoil realizó un evento económico dentro del Municipio de Guayanilla por el cual generó ingresos dentro o fuera de Puerto Rico. Veamos.

## III

El Municipio de Guayanilla reclama que es incorrecto afirmar que la presencia de una oficina o establecimiento en el municipio impositor es un requisito de la Ley de Patentes Municipales para todas las actividades tributables. Sostiene que imponer ese requisito dejaría sin efectividad la intención del legislador para garantizar la autonomía fiscal que se contempló al aprobar la legislación. Particularmente, arguye que a la controversia de autos le aplican las disposiciones contenidas para la determinación del volumen de negocios relacionadas con las actividades de ventas, dependiendo de la industria o negocio, bajo las cuales no se requiere de un establecimiento comercial en el municipio. De esta forma, sostiene que estamos ante una industria o negocio complejo que requiere beneficiarse de las operaciones del puerto del Municipio, ya que para que la venta se consumara era necesario el traspaso y aprobación de la AEE del combustible adquirido.

Por su parte, Lukoil impugna la patente municipal que se le pretende cobrar al argumentar que no está sujeto al pago de ésta, ya que la premisa que da lugar a la imposición es que exista un establecimiento físico de

una persona o empresa dentro de la demarcación territorial del municipio. Para ello, hace referencia a las disposiciones de la Ley de Patentes Municipales que atiende particularmente las situaciones en las cuales existe el establecimiento físico de la persona o de la industria o negocio.

A base de ello, la Mayoría de este Tribunal determina que le asiste la razón a Lukoil. Para ello, concluye que la Ley de Patentes contempla el que el contribuyente tenga presencia física en el municipio. Diferimos de tal interpretación.

Tal y como hemos expuesto, la Ley de Patentes Municipales amplía la facultad impositora de los municipios para gravar el ingreso de las actividades comerciales llevadas a cabo en su demarcación territorial. Tal contribución es aplicable a toda persona por la prestación de cualquier servicio, la venta de cualquier bien, negocio financiero o cualquier industria o negocio. 21 LPRA secs. 651a (16), 651b, 651c. Ésta será determinada por la totalidad de los ingresos devengados dentro y fuera de Puerto Rico siempre que estén relacionados o sean atribuibles con la explotación de una industria o negocio en Puerto Rico. 21 LPRA sec. 651a (15), 651d. En ninguna de estas disposiciones se requiere que la actividad sobre la cual proceda el tributo tenga un local comercial para su operación.

Ante ello, la conclusión a la que llega la Mayoría de este Tribunal descarta las disposiciones antes discutidas e incorpora aquellas del estatuto atinentes al principio de prorrateo para concluir que es necesaria la presencia física para que proceda el pago de patentes municipales. Sin embargo, estas disposiciones fueron concebidas para distribuir entre todos los municipios el cobro de patentes municipales en aquellos escenarios en las que se lleve a cabo actividad comercial **en más de un municipio**. Por tanto, las mismas no impiden que existan situaciones en las que proceda el pago del gravamen por razón de que se devengue un ingreso aprovechándose de los servicios municipales sin que haya un establecimiento o local comercial.

De otra parte, concibo que la entrega de cientos de barriles de petróleo en el Municipio de Guayanilla por Lukoil no constituye una actividad incidental al negocio de esa empresa. Tampoco debe tratarse como una simple entrega de cualquier otro tipo de producto. Por el contrario, la actividad realizada configura realmente la operación con fines de lucro que Lukoil llevó a cabo en el Municipio de Guayanilla, es decir, la venta de petróleo. La compra de combustible por la AEE es una actividad compleja que requiere que se cumplan con ciertos estándares y equipos para poder procesar de forma segura el material y revisar la calidad de éste y su contenido de azufre antes de ser aceptado por la AEE. De

hecho, la AEE adquiere el combustible a través de terceros por razones de seguridad, y no adquiere la titularidad del producto hasta que éste se descarga en el muelle.[34] Ante tal realidad, el negocio entre Lukoil y la AEE requería la entrega del referido combustible para que se produjera la venta. Así, Lukoil se aprovechó de las instalaciones ubicadas en el muelle del Municipio de Guayanilla, por lo que su ingreso es atribuible a la operación ejecutada en esa demarcación territorial. Para ello, no es necesario que Lukoil tenga una oficina o local comercial en el referido municipio. Avalar la improcedencia del pago de patentes municipales por el negocio llevado a cabo por Lukoil afectaría los recaudos municipales y perpetuaría la exención reconocida por la Ley de Patentes Municipales para la adquisición de combustible por la AEE, a pesar de que ésta fue eliminada con la clara intención de atender reclamos como el que está ante nuestra consideración. Asimismo, existe una base para imponer la patente municipal que consiste en la totalidad del ingreso derivado por Lukoil por la venta del combustible a la AEE.[35]

---

[34] Véase, Ponencia de la Autoridad de Energía Eléctrica sobre el P. del S. 1520.

[35] Entendemos que resulta innecesario auscultar la defensa de Lukoil en cuanto a una posible violación de la cláusula de comercio en su estado durmiente. Sin embargo, advertimos que para validar la imposición del tributo es necesario que (1) exista un nexo sustancial entre la actividad sujeta a la contribución y el estado que la impone; (2) la contribución esté distribuida

IV

equitativamente; (3) no se discrimine contra el comercio interestatal; y esté (4) relacionada con los servicios provistos por el estado. ELA v. Northwestern Selecta, 185 DPR 40, 75 (2012) citando a Complete Auto Transit Inc. v. Brady, 430 US 274, 279 (1977). Asimismo, cuestionamos la aplicación de Quill Corp. v. North Dakota, 504 US 298 (1992) con relación al primer requisito, ya que en este caso la decisión estuvo basada en que la corporación lo único que hacía era "communicate with customers in the State by mail or common carrier as part of interstate business." Íd., pág. 315. Véase, además, Koch Fuels, Inc. v. Clark, 676 A.2d. 330 (1996) cer. denegado 519 US 930 (1996). (En este caso se validó un impuesto sobre las ventas brutas de combustible a una planta eléctrica, a pesar de que el vendedor no tenía "presencia física" en el estado impositor y reclamó que se violaba la cláusula de comercio interestatal. Para ello, se auscultó la cantidad de la venta, el control y contacto sobre la entrega, el que la venta se consumiera con la entrega y la naturaleza de la carga). Finalmente, se determinó que no había una violación a la cláusula de comercio ya que Koch "had sufficient **contact** with the state to satisfy ths substantial-nexus requirement, of the *Complete Auto* test". (Énfasis suplido). Íd, pág. 334. Es a base de ello que se validó el impuesto.

Lo expuesto dista de la inferencia que hace la Opinión mayoritaria a los efectos de concluir que para que exista un nexo sustancial que no viole la cláusula de comercio interestatal se requiera un establecimiento o local comercial en el estado impositor. Lo determinante es la calidad de los contactos que hubo con la demarcación geográfica. Véanse, además, M.T. Fatale, State Jurisdiction and the mythical "physical presence" constitutional standard, 54 Tax Law 105 (2000); Saudi Refining, Inc. v. Director of Revenue, 715 A.2d 89, 97 (1998) en el que se estableció, en otro caso de entrega de crudo, que "[t]he facts and circumstances of *Quill,* however, are clearly distinguishable from the instant case. SRI is not a mail-order business with no other contacts with Delaware. The sheer magnitude of the goods purchased, the length of time necessary to consummate the sales transaction while the goods are in Delaware territory, and the complex arrangements for delivery and passage of title indicate a relationship with Delaware of a wholly different order than contemplated in *Quill.* For the above reasons, the Court finds that SRI has a substantial nexus with the State as required under the *Complete Auto* test". Íd.

Conforme con lo expuesto, no puedo avalar la postura que hoy asume este Tribunal al concluir que no procedía la imposición y cobro de patentes municipales. En cambio, estoy obligado a disentir, ya que hubiera revocado a los foros recurridos y determinado que procedía el pago de patentes municipales a favor del Municipio de Guayanilla.

Luis F. Estrella Martínez
Juez Asociado