EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Lilly del Caribe, Inc.<br><br>Peticionaria<br><br>v.<br><br>Municipio Autónomo de Carolina<br>y otros<br><br>Recurrido | Certiorari<br><br>2022 TSPR 101<br><br>210 DPR ____ |

Número del Caso: AC-2020-100

Fecha: 2 de agosto de 2022

Tribunal de Apelaciones:

    Panel Especial

Abogados de la parte peticionaria:

    Lcdo. Juan A. Marqués Díaz
    Lcdo. Rubén Muñiz Bonilla
    Lcda. Yahaira De la Rosa Algarín

Abogados de la parte recurrida:

    Lcdo. Eduardo H. Martínez Echevarría
    Lcdo. Miguel Eliza Rivera
    Lcdo. Lourdes I. Morera Ledón

*Amicus Curiae* de Compañía de Fomento Industrial de Puerto Rico:

    Lcdo. Gabriel Maldonado González
    Lcda. Celeste A. Rexach Benítez
    Lcdo. José Sánchez Acosta

Materia: Derecho Tributario – La exención contributiva que surge de la Sección 9(31) de la Ley de Patentes Municipales, puede ser reclamada por una empresa, por el mero hecho de que el ingreso deducido sea derivado únicamente de una actividad de exportación. Los municipios no gozan de una facultad para imponer requisitos adicionales al procedimiento para acogerse a esta exención contributiva.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Lilly del Caribe, Inc.<br><br>Peticionaria<br><br>v.<br><br>Municipio Autónomo de Carolina y otros<br><br>Recurrido | AC-2020-0100 | *Certiorari* |

**El Juez Asociado señor Rivera García emitió la Opinión del Tribunal**

En San Juan, Puerto Rico, a 2 de agosto de 2022.

En el día de hoy debemos expresarnos sobre el alcance de la exención contributiva que surge de la Sección 9(31) de la Ley de Patentes Municipales, *infra*. En particular, debemos resolver si esta gracia tributaria puede ser reclamada por una empresa, por el mero hecho de que el ingreso deducido sea derivado únicamente de una actividad de exportación, sin requisito ulterior. **Contestamos en la afirmativa**.

Al así disponer, aclaramos que **los municipios** de Puerto Rico **no gozan de una facultad** para imponer **requisitos adicionales** al procedimiento para acogerse a una **exención contributiva** ⸺por motivo de ingresos exclusivamente derivados de la exportación⸺ más allá de los que surjan de las leyes y reglamentos, ya sean federales o estatales. Por lo tanto, para disfrutar de la exención que emana de la Sección 9(31) de la Ley de

Patentes Municipales, *infra*, una empresa solo debe satisfacer tres (3) requisitos, a saber: **(1) estar debidamente autorizada para hacer negocios en Puerto Rico, (2) tener sus operaciones localizadas en una Zona de Comercio Exterior y (3) que el ingreso al cual se pretenda aplicar la exención contributiva proceda únicamente de una actividad de exportación**. Veamos.

I

El 6 de noviembre de 2014, el Municipio Autónomo de Carolina (Municipio o recurrido) le cursó a Lilly del Caribe, Inc. (Lilly o peticionaria) una *Notificación Preliminar de Deficiencia* de $12,410,893.13 en el pago de sus patentes municipales.[1] La presunta deficiencia correspondía a los años contributivos 2009-2010 al 2013-2014, conforme a la Ley de Patentes Municipales, *infra*.[2] El Municipio le indicó a Lilly que la deficiencia consistía en que esta, indebidamente, reclamó una exención sobre un ingreso que no fue derivado de la exportación desde una Zona de Comercio Exterior, bajo la Sección 9(31) de la Ley de Patentes Municipales, *infra*.[3]

Además, le indicó a Lilly que solo podía aplicar la exención a los únicos productos autorizados en virtud de la solicitud que la peticionaria hiciera a la Compañía de Fomento Industrial (CFI), para el establecimiento de

---

[1] Apéndice del Certiorari, *Demanda*, pág. 122
[2] Íd.
[3] Íd.

la Sub-Zona 7k, y el decreto expedido por la Junta de Zonas de Comercio Exterior (Junta) para la manufactura y exportación bajo las disposiciones de la Ley de Zonas de Comercio Exterior de 1934, *infra*.[4] A saber, podía únicamente aplicar la exención para la exportación de los medicamentos *Humalog* y *Cymbalta*.[5] Por último, dada la presunta insuficiencia en el pago de las patentes adeudadas, se ajustó el descuento por pronto pago reclamado por Lilly, a tenor con la Sección 11 de la Ley de Patentes Municipales, *infra*.[6]

En desacuerdo, Lilly solicitó reconsideración ante el Municipio y señaló que la exención provista por la Sección 9(31) de la Ley de Patentes Municipales, *infra*, solo exige que el ingreso sea derivado de una actividad de exportación de una empresa localizada en una Zona de Comercio Exterior.[7] Por lo tanto, arguyó que la ley no requiere que los ingresos resulten únicamente de la venta de aquellos productos para los cuales la empresa hubiese solicitado autorización para su manufactura y exportación a la Junta de Zonas de Comercio Exterior.[8] En respuesta, el 15 diciembre de 2014, el Municipio cursó a Lilly una *Notificación Final de Deficiencia* para los

---

[4] Íd.
[5] Íd.
[6] Íd., pág. 123.
[7] Íd.
[8] Íd.

años 2009-2010 al 2013-2014, reafirmando su postura inicial.[9]

Así, el 13 de enero de 2015, Lilly presentó una *Demanda* ante el Tribunal de Primera Instancia, en la que impugnó el señalamiento de deficiencias notificado por el Municipio.[10] En lo pertinente a este pleito, Lilly adujo que tenía derecho a la exención reclamada al amparo de la Sección 9(31) de la Ley de Patentes Municipales, *infra*, con relación a los ingresos derivados de su actividad de exportación de *Humalog, Cymbalta* y otros productos a mercados extranjeros.[11] Así las cosas, Lilly le solicitó al Tribunal de Primera Instancia que ordenara al Municipio a efectuar la cancelación de las deficiencias notificadas, la cancelación de la fianza prestada y el pago de gastos, costas y desembolsos incurridos en la tramitación del pleito.[12]

Por su parte, el Municipio presentó una *Moción de Desestimación Parcial Relacionada a Reclamos de Exención bajo la Sección 9(31) de la Ley de Patentes Municipales* y, posteriormente, una *Moción de Desestimación Parcial y/o Allanándose de Reclamos de Prescripción y Derecho a*

---

[9] Íd., pág. 124.
[10] Íd.
[11] Íd., págs. 125-26.
[12] Íd., págs. 126-27. Surge, además, que Lilly alegó que el Municipio actuó contrario a derecho al no reconocerle un descuento por pronto pago ante el señalamiento de deficiencia. Empero, toda vez que los asuntos que ocupan este recurso se ciñen a las controversias en torno a la Sección 9(31) de la Ley de Patentes Municipales, *infra*, resulta innecesario reseñar cualquier otro tramite ajeno a ello.

*Descuentos*. En ambas, expuso que la *Demanda* debía ser desestimada puesto que Lilly no podía reclamar exención alguna, bajo la Sección 9(31) de la Ley de Patentes, *infra.* Lo anterior, en atención al volumen de negocios atribuible a la venta de productos que no gozaban de los beneficios dispuestos en la Ley de Zonas de Comercio Exterior y que no contaban con la autorización de la Junta de Zonas de Comercio Exterior.[13] Afirmó que Lilly solo podía exigir la exención sobre los productos *Humalog* y *Cymbalta.*[14]

Oportunamente, Lilly se opuso a los pedidos del Municipio. De entrada*,* reiteró que el recurrido pretendía añadir condiciones o requisitos que la ley no contempla para los efectos de acogerse a la exención contributiva.[15] Adujo, además, que la solicitud de desestimación resultaba improcedente al no tomar como ciertas todas las alegaciones fácticas de la reclamación, que exponía materias no contenidas en la *Demanda* y añadía varios documentos que tampoco formaban parte de aquella.[16] Por lo cual, entendió que, a lo sumo, se trataba verdaderamente de una solicitud de sentencia

---

[13] Apéndice del *Certiorari*, *Moción de Desestimación Parcial Relacionada a Reclamos de Exención bajo la Sección 9(31) de la Ley de Patentes Municipales*, pág. 147; Apéndice del *Certiorari*, *Moción de Desestimación Parcial y/o Allanándose de Reclamos de Prescripción y Derecho a Descuentos*, pág. 168.

[14] Apéndice del *Certiorari*, *Moción de Desestimación Parcial Relacionada a Reclamos de Exención bajo la Sección 9(31) de la Ley de Patentes Municipales*, págs. 151-52.

[15] Apéndice del *Certiorari*, *Oposición a Moción de Desestimación Parcial Relacionada a Reclamos de Exención bajo la Sección 9(31) de la Ley de Patentes Municipales*, pág. 182.

[16] Íd., pág. 183.

sumaria, la cual arguyó no cumplía con los requisitos pertinentes.[17]

Así las cosas, el 31 de agosto de 2015, el Tribunal de Primera Instancia celebró una vista argumentativa en la cual desestimó el señalamiento de deficiencia que el Municipio le había notificado a Lilly respecto al año 2009-10.[18] Concluida la vista, el foro primario les concedió término a las partes para exponer sus respectivas posturas por escrito, luego de lo cual resolvería.

Conforme a ello, mediante *Sentencia* del 8 de julio de 2016, el Tribunal de Primera Instancia resolvió que a Lilly le asistía el derecho a reclamar la exención contributiva que dispone la sección 9(31) de la Ley de Patentes, *infra*, en tanto cumplió con los tres (3) requisitos exigidos por este estatuto, a saber: **(1) que es una compañía autorizada a hacer negocios en Puerto Rico; (2) que se encuentra localizada en una Zona de Comercio Exterior, y; (3) que el ingreso se deriva de la actividad de exportación de dicha empresa.**[19] De esta manera, concluyó que la exención del pago de patentes municipales aplicaba a todos los ingresos que Lilly derivó de la exportación a mercados extranjeros, de

---

[17] Íd.
[18] Apéndice del *Certiorari*, *Minuta* del 31 de agosto de 2015, pág. 287.
[19] Apéndice del *Certiorari*, *Sentencia* del 8 de julio de 2016, pág. 570.

cualquier producto, sin limitarse a aquellos productos identificados al momento de solicitar autorización a la Junta de Zonas de Comercio Exterior para manufacturar en una Zona de Comercio Exterior.[20]

Insatisfecho, el Municipio presentó una moción de reconsideración, la cual fue declarada sin lugar. Inconforme aún, presentó un recurso de *Apelación* ante el Tribunal de Apelaciones. En lo pertinente, alegó que

> [e]rró el Tribunal de Primera Instancia al declarar no ha lugar la moción de desestimación del Municipio al amparo de la sección 9(31) de la Ley de Patentes y resolver que la sección 9(31) concede una exención absoluta a aquellas empresas que operen en una Zona de Libre Comercio, sin importar el tipo de operación que fuera en ella autorizada.[21]

Así las cosas, el 29 de julio de 2020, el Tribunal de Apelaciones dictó *Sentencia* en la que revocó al foro primario, al entender que no bastaba que Lilly estuviera autorizada a hacer negocios en Puerto Rico, y que estuviera ubicada en una Zona de Comercio Exterior, para beneficiarse de la exención contributiva en el pago de patentes sobre los productos exportados.[22] Estimó que también era necesario que las operaciones de la empresa se llevaran de conformidad con el **Acta de Zonas de**

---

[20] *Id.*

[21] Apéndice del Certiorari, Recurso de Apelación del Municipio de Carolina ante el Tribunal de Apelaciones, pág. 89.

[22] Apéndice del *Certiorari*, *Sentencia* del 29 de julio de 2020, pág. 59.

**Comercio Exterior de 1934**.[23] Insatisfecha, Lilly solicitó

reconsideración, la cual fue denegada.

No conteste, Lilly presentó un recurso de *Apelación*

ante esta Curia y señaló los errores siguientes:

> Erró el TA al revocar la Sentencia del TPI pues la
> Ley de Patentes Municipales sí otorga una exención
> del pago de patentes municipales al volumen de
> negocios derivado de la exportación de aquellas
> empresas cuyas operaciones se encuentren en las Zonas
> de Comercio Exterior, sin añadir condición adicional
> alguna.

> Erró el TA al revocar la Sentencia del TPI ya que,
> conforme a la Cláusula de Supremacía, la regulación
> de las Zonas de Comercio Exterior y lo que está
> permitido y autorizado dentro de ellas le compete a
> la Junta de Zonas de Comercio Exterior y no al
> Municipio de Carolina o al TA.

> Erró el TA al revocar la Sentencia recurrida y
> realizar una interpretación de la Ley de Patentes
> Municipales que incide sobre la facultad delegada de
> la Asamblea Legislativa de imponer contribuciones
> bajo la Constitución de Puerto Rico y en clara
> violación de la Doctrina de Separación de Poderes.

> Erró el TA al revocar la Sentencia recurrida, pues la
> denegatoria de la exención por actividad de
> exportación en una Zona de Comercio Exterior es
> contraria a la Cláusula de Importación y Exportación
> de la Constitución de Estados Unidos.

> Erró el TA al no resolver de forma prospectiva la
> imposición de un requisito sobre la exención
> concedida a las empresas que se encuentran en una
> Zona de Comercio Exterior y que no era razonablemente
> previsible bajo el estado de derecho vigente hasta el
> momento.

Examinado el recurso, lo acogimos como un

*certiorari* y expedimos el auto.

Posteriormente, autorizamos a la Compañía de

Fomento Industrial (CFI) a comparecer como *amicus*

*curiae*. Así, la CFI sostiene que la autoridad para

---

[23] Íd.

determinar si una actividad de producción cae dentro de la autorización concedida a una Zona de Comercio Exterior le compete a la Junta de Zonas de Comercio Exterior y no a los municipios.[24] Puntualizó, que fue el foro primario quien interpretó correctamente la Sección 9(31) de la Ley de Patentes Municipales, *infra*.[25] Afirma que la estabilidad de la actividad empresarial en las Zonas de Comercio Exterior, la credibilidad de la CFI, el Gobierno de Puerto Rico y la integridad de una de las herramientas más importantes de desarrollo económico en nuestra jurisdicción se encuentran en juego en este caso.[26]

Perfeccionado así el recurso, nos encontramos en posición de resolver.

**II**

**A. Poder de Imponer Contribuciones por los Municipios en Puerto Rico**

La Constitución de Puerto Rico en su Artículo VI, Sección 2, dispone que "[e]l poder del Estado Libre Asociado para imponer y cobrar contribuciones **y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa**,

---

[24] Alegato de la Compañía de Fomento Industrial de Puerto Rico como *Amicus Curiae*, pág. 12.
[25] Íd., pág. 14.
[26] Íd.

y nunca será rendido o suspendido". [27] (Énfasis suplido).

Al ser una facultad delegada constitucionalmente al Poder Legislativo, este Tribunal ha reiterado en varias ocasiones que los municipios no tienen un poder inherente, independiente del Estado, para imponer contribuciones.[28] No obstante, "se favorece claramente una interpretación amplia de las leyes que conceden poderes contributivos a los municipios, para que estos puedan proveer más servicios directos a sus ciudadanos".[29]

Así, la Asamblea Legislativa puede delegar a los municipios la facultad de cobrar contribuciones, mediante un mandato claro y expreso, puesto que estos no tienen un poder inherente para imponerlas.[30] Consecuentemente, los municipios pueden imponer y cobrar tributos en cuanto a: (1) patentes municipales, (2) contribuciones sobre la propiedad, (3) arbitrios de construcción, entre otros.[31]

En *Compañía de Turismo v. Municipio de Vieques*, 179 DPR 578 (2010), nos enfrentamos ante una controversia sobre si los municipios podían imponer contribuciones

---

[27] Const. PR, Art. VI, Sec. 2.

[28] *Lukoil Pan Americas, LLC v. Municipio de Guayanilla*, 192 DPR 879 (2015); *Interior Developers v. Mun. de San Juan*, 177 DPR 693, 703 (2009).

[29] C. Díaz Olivo, *Derecho Tributario: Aspectos Constitucionales y Procesales de la Tributación*, AlmaForte, 2019, pág. 135.

[30] *Interior Developers v. Mun. de San Juan*, supra, pág. 703; *Compañía de Turismo v. Mun. de Vieques*, 179 DPR 578, 584 (2010).

[31] Díaz Olivo, *op. cit.*, pág. 136 (citas omitidas).

sobre el mismo evento contributivo que ya había sido gravado por la Asamblea Legislativa, en favor del Estado. Allí dijimos que los ayuntamientos **no podían imponer tributos sobre una materia que el Poder Legislativo había ocupado**.[32] Esto significa que el poder impositivo municipal puede ser ejercido solo sobre materias **que no sean incompatibles con la tributación impuesta por el Estado**.[33] En el citado caso, adoptamos el estándar de examinación aplicable a estas controversias. Así, dispusimos que

> a la hora de determinar si entre un tributo municipal y el Código de Rentas Internas y las demás leyes existe la compatibilidad que exigen las referidas secciones de la Ley de Municipios Autónomos debemos realizar **un análisis ponderado de cada caso en particular**, en consideración a las características específicas de cada tributo y prestando especial atención a los elementos de su hecho imponible. (Énfasis suplido).[34]

**B.    Doctrina de Campo Ocupado**

Por otra parte, de la Constitución federal surge la llamada Cláusula de Supremacía, que dispone lo siguiente:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof;[…] **shall be the supreme Law of the Land**; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any state to the Contrary notwith-standing.[35]

De esta disposición surge la Doctrina de Campo Ocupado. En virtud de esta, se evitan los conflictos

---

[32] *Compañía de Turismo v. Mun. de Vieques*, *supra*, pág. 591.
[33] Íd., pág. 585.
[34] Íd.
[35] Art. VI, Const. EE.UU., LPRA, Tomo 1 (énfasis suplido).

regulatorios entre dos gobiernos, fomentando la uniformidad.[36] El efecto de este precepto es que el Congreso, en virtud de la Cláusula de Supremacía, puede ocupar el campo sobre un asunto federal y **excluir la regulación local**.[37]

Según hemos dispuesto, la jurisdicción exclusiva del Gobierno federal, en los asuntos federales, puede surgir cuando así lo haya expresado el Congreso o cuando la clara intención de la ley sea privar de jurisdicción a los tribunales estatales.[38] Además, se ocupa el campo en aquellas circunstancias en las cuales el interés o propósito federal es tan dominante que no debe existir reglamentación estatal, o, cuando esta podría producir un **resultado incompatible con los objetivos federales** en determinada área.[39] En fin, **cualquier ley estatal que contravenga una ley federal es nula**.[40]

En lo pertinente a la controversia que nos ocupa, debemos señalar una consideración adicional. En concreto, en las décadas pasadas tuvimos ocasión para exponer una vertiente autóctona de la Doctrina de Campo Ocupado. Esto fue en referencia a la relación entre el Gobierno de Puerto Rico y los municipios de nuestra

---

[36] *Mun. de Peñuelas v. Ecosystems, Inc.*, 197 DPR 5, 14 (2016); *González v. Mayagüez Resort & Casino*, 176 DPR 848, 856 (2009).

[37] *González v. Mayagüez Resort & Casino*, supra, pág. 856.

[38] *Mun. de Peñuelas v. Ecosystems, Inc.*, supra, págs. 14-15.

[39] Íd., pág. 15. Véase también *R.J. Reynolds Tobacco Co. v. Durham County, N.C.*, 479 U.S. 130, 140 (1986) ("Pre-emption may also be found where state legislation would impede the purposes and objectives of Congress".).

[40] Íd.

Isla. Respecto a ello, en *López v. Mun. de San Juan*,[41] expresamos que **las legislaturas municipales no tienen autoridad para intervenir cuando la Asamblea Legislativa ha ocupado el campo**.[42] Así, aludimos esencialmente a los **mismos factores** que surgen de la normativa federal, en cuanto a las instancias en las cuales se entiende que se ha ocupado el campo.[43]

Por tanto, expresamos las siguientes normas para tener en cuenta a la hora de determinar si se ha ocupado el campo por la Asamblea Legislativa. A saber:

> Primero, donde la ley estatal dispone expresamente que la autoridad del estado para reglamentar determinada materia es exclusiva, resulta claro que el estado ha ocupado el campo. [Citas omitidas.]
>
> Segundo, la intención de la Asamblea Legislativa de ocupar el campo puede constar **implícitamente en el historial legislativo de la ley**. [Citas omitidas.]
>
> Tercero, la existencia de un esquema de reglamentación estatal abarcador podría apoyar una conclusión de que el estado ha ocupado el campo. [Citas omitidas.] Aunque la existencia de un esquema de reglamentación estatal abarcador generalmente no es suficiente de por sí para inferir la ocupación del campo, es un factor que debe considerarse como evidencia de la ocupación del campo.
>
> Cuarto, la **naturaleza de la materia** reglamentada puede exigir reglamentación estatal exclusiva para lograr la **uniformidad necesaria** para cumplir los propósitos o intereses del estado. (Énfasis suplido).[44]

---

[41] *López v. Mun. de San Juan*, 121 DPR 75 (1988).
[42] Íd., pág. 89. Véase también *Vélez v. Mun. de Toa Baja*, 109 DPR 369, 374 (1980).
[43] *López v. Mun. de San Juan*, supra, pág. 89.
[44] Íd.

C.    **Ley de Patentes Municipales**

Retornando a nuestro ordenamiento tributario, vemos que las patentes municipales son un instrumento de cobro de contribución por el cual los municipios generan ingresos y se robustecen económicamente para cumplir con el bienestar general de sus ciudadanos.[45] Para adelantar este propósito, la Asamblea Legislativa ha delegado por medio estatutario distintas facultades de cobro de contribuciones a los municipios.[46] Una de estas lo es la Ley de Patentes Municipales, *supra*.

Fue por medio de dicha ley, que la Asamblea Legislativa habilitó a los municipios para poder cobrar contribuciones por medio de las patentes municipales a aquellas empresas con fines de lucro establecidas en su jurisdicción geográfica. Específicamente, la antecitada ley define la patente municipal como:

> [l]a contribución impuesta y cobrada por el municipio bajo las disposiciones de esta ley, a toda persona dedicada con fines de lucro a la prestación de cualquier servicio, a la venta de cualquier bien a cualquier negocio financiero o negocio en los municipios del Estado Libre Asociado de Puerto Rico.[47]

Aunque la patente municipal pareciera ser un permiso para ejercer una actividad económica, hemos

---

[45] *Lukoil Pan Americas, LLC v. Municipio de Guayanilla*, supra, pág. 889; *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 818 (2013).

[46] Véanse, Ley Núm. 81-1991, Ley de Municipios Autónomos, 21 LPRA sec. 4001 *et seq.* (derogada); Ley Núm. 83-1991, Ley de Contribución Municipal sobre la Propiedad, 21 LPRA sec. 5001 *et seq.* (derogada); Ley Núm. 80-1991, Ley del Centro de Recaudación de Ingresos Municipales, 21 LPRA sec. 5801 *et seq.* (derogada).

[47] 21 LPRA sec. 651a (derogada).

reconocido que verdaderamente "se trata de un impuesto sobre el volumen de negocios de la empresa objeto del tributo",[48] el cual se calcula en base del volumen de negocios llevado a cabo por la empresa en ese municipio.[49]

Recientemente, en *Lukoil Pan Americas, LLC v. Municipio de Guayanilla*, 192 DPR 879 (2015), este Tribunal tuvo ocasión para examinar detenidamente el poder tributario que emana de la Ley de Patentes Municipales. Razonamos que para que una empresa esté sujeta a la tributación de las patentes municipales "el factor determinante es que el ingreso se produzca como consecuencia de los negocios que la persona, natural o jurídica, desempeña en el municipio, lo cual implica que el ingreso no hubiese sido generado a no ser por las operaciones llevadas a cabo allí".[50] **Resolvimos, que es un factor determinante que haya presencia física en el municipio impositor de la contribución.**[51]

**D. Sección 9(31) de la Ley de Patentes Municipales**

Examinada la base jurídica sobre la cual descansa la facultad de los municipios para cobrar contribuciones por concepto de patentes municipales, procedemos a

---

[48] *Lukoil Pan Americas, LLC v. Municipio de Guayanilla*, supra, pág. 889 (*citando a Muñiz Burgos, Inc. v. Mun. de Yauco*, 187 DPR 665, 681 (2013)).

[49] *Lukoil Pan Americas, LLC v. Municipio de Guayanilla,* supra, pág. 889; *El Día, Inc. v. Mun. de Guaynabo*, supra, pág. 818.

[50] *Íd.*, pág. 892.

[51] 21 LPRA sec. 651b (derogada).

estudiar detenidamente la Sección 9(31) de la Ley de Patentes Municipales, *supra*. Dicha disposición provee una exención contributiva sobre el pago de patentes municipales a ciertas empresas, por motivo de estar estas ubicadas en una Zona de Comercio Exterior.[52]

Como hemos expresado, las exenciones contributivas son "aquellas normas de aplicación especial que establecen que una norma tributaria general no aplica a ciertos supuestos de hecho que delimitan y que, como resultado, impiden que se deriven los efectos jurídicos de ésta, o sea, **impiden que nazca la obligación tributaria**".[53] (Énfasis suplido). Sobre este particular, en numerosas ocasiones hemos señalado que, al tratarse de normas especiales que niegan los efectos de las normas tributarias, **su interpretación no se debe extender más allá de los términos expresos y exactos del estatuto que las otorga** y toda duda debe resolverse en contra de su existencia.[54] Ahora bien, aunque hemos señalado que las exenciones contributivas son gracias legislativas, que deben interpretarse en contra de

---

[52] 21 LPRA sec. 651h (derogada).

[53] *Lukoil Pan Americas, LLC v. Municipio de Guayanilla*, supra, pág. 895 (*citando a Ortiz Chévere v. Srio. de Hacienda*, 186 DPR 951, 976 (2012)).

[54] Véanse, *Lukoil Pan Americas, LLC v. Municipio de Guayanilla*, supra, págs. 895-96; *Caribbean v. Neg. Asist. Contr.*, 185 DPR 1008, 1027 (2012); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 742 (2012).

aquella persona que alegue tener derecho a ellas,[55] también hemos hecho hincapié en que estas normas **no deben ser interpretadas restrictivamente si ello derrota la intención legislativa**.[56]

Al examinar el historial de la exención contributiva consignada en la Sección 9(31) de la Ley de Patentes Municipales, *supra*, encontramos varias actuaciones legislativas que resultan imprescindibles para un análisis integral de su intención. De entrada, esta exención tiene su origen en la Ley Núm. 131-1999, mediante la cual nuestra Asamblea Legislativa enmendó la Ley de Patentes Municipales para otorgar una exención contributiva sobre las patentes municipales a las empresas o negocios que forman parte de las Zonas de Comercio Exterior.[57]

Esta exención se otorgaría siempre que dichas zonas fueran declaradas por el Congreso de los Estados Unidos por medio de la Ley de Zonas de Comercio Exterior de 1934, *infra*. En concreto, se dispuso una exención respecto al pago de las patentes municipales de

> [e]xclusivamente el ingreso derivado de la actividad de exportación generada de empresas localizadas en una Zona de Comercio Exterior, incluyendo el ingreso que generen los productos utilizados en el proceso de manufactura, mezcla o

---

[55] Véase *Lukoil Pan Americas, LLC v. Municipio de Guayanilla*, supra, pág. 896.

[56] *Lukoil Pan Americas, LLC v. Municipio de Guayanilla, supra,* pág. 896; *Pepsi-Cola v. Mun de Cidra*, 186 DPR 713, 738 (2012).

[57] Ley Núm. 131-1999, 1999 (Parte 1) LPR 415-18.

embalaje realizado dentro de la zona, establecida conforme a lo dispuesto en el Acta de Zonas de Comercio Exterior de 1934 (19 U.S.C. 81C (a), por una entidad incorporada bajo las leyes del Gobierno de Puerto Rico o por una compañía autorizada a hacer negocios en Puerto Rico.[58]

En la exposición de motivos de la medida, la Asamblea Legislativa justificó la inclusión de este apartado expresando que "[l]as zonas de comercio exterior pretenden atraer actividad industrial, razón por la cual la exención de **todo tipo de contribución sobre la mercancía es necesaria para cumplir el objetivo congresional, sin importar cuál sería el destino final de dicha mercancía"**.[59] (Énfasis suplido). Además, añadió que

> [l]a medida propuesta incorpora un atractivo contributivo tanto a la actividad industrial como a la exportación mediante **un mecanismo para otorgar una exención del pago de patentes municipales exclusivamente al volumen de negocios derivado de la exportación de aquellas empresas cuyas operaciones se encuentren en las Zonas de Comercio Exterior.** (Énfasis suplido).[60]

Luego de esta enmienda, la Asamblea Legislativa modificó la Sección 9(31) mediante la Ley Núm. 350-1999, al añadir un lenguaje que incluyera, pero no limitara, la exención al pago de contribuciones por patentes municipales a empresas "dedicadas a la compra y venta de crudo y sus derivados, cuyas operaciones se lleven a cabo a tenor con lo dispuesto en la Ley de Zonas de

---

[58] Íd., pág. 418.
[59] Íd., pág. 417.
[60] Íd., pág. 418.

Comercio Exterior de 1934".[61] No obstante, este lenguaje fue sustituido, nuevamente, en virtud de la Ley Núm. 126-2005, en la que se excluyó del goce de la exención contributiva a las compañías dedicadas a la compra y venta de crudo y sus derivados.[62] Así, arribamos al lenguaje vigente a la fecha de los hechos que nos ocupan.

Es meritorio destacar, que para el año 2000 la Asamblea Legislativa aprobó la Resolución Concurrente del Senado Núm. 68 con el fin de aclarar el alcance de la Ley Núm. 131-1999 y la intención legislativa de dicha medida.[63] Así, expuso que

> el alcance de la Ley Núm. 131 de 17 de junio de 1999 fue conceder una exención del pago de la patente municipal a las empresas establecidas en las zonas y subzonas de comercio exterior autorizadas por la Junta de Zonas de Comercio Exterior al amparo de las disposiciones del "Foreign Trade Zone Act" de 1934 (19 U.S.C. 81 C (a)) **exclusivamente sobre el ingreso derivado de la actividad de exportación a mercados foráneos, entiéndase, cualquier mercado que no sea Puerto Rico, los Estados Unidos de América, incluyendo sus posesiones o territorios**.[64] (Énfasis suplido).

Por último, surge que dicha resolución se aprobó a los únicos efectos de aclarar el alcance de la Ley Núm. 131-1999 "de modo que se eviten **interpretaciones**

---

[61] Ley Núm. 350-1999, 1999 (Parte 2) LPR 1600-06.
[62] Ley Núm. 126-2005, 2005 (Parte 2) LPR 504-06.
[63] R. Conc. del S. 68 de 30 de junio de 2000, 7ma Ses. Ord., 13ma Asam. Leg. Sabido es que las Resoluciones Concurrentes son **expresiones que revelan la voluntad de los cuerpos legislativos**, aunque no constituyen propiamente legislación. Véase, *PIP v. ELA*, 186 DPR 1, 30 (2012).
[64] *Id.* (énfasis suplido).

**incorrectas por parte** de los **municipios**, las empresas, las personas interesadas y los **tribunales de justicia**".[65]

### E.    Zonas de Comercio Exterior

Las Zonas de Comercio Exterior se establecieron en virtud de la Ley de Zonas de Comercio Exterior o *Foreign Trade Zones Act* de 1934.[66] Este estatuto provee para el establecimiento, operación y mantenimiento de Zonas de Comercio Exterior en los puertos de entrada de los Estados Unidos; además de agilizar y fomentar el comercio exterior.[67] Importantemente, el Congreso dispuso que Puerto Rico, sería considerado como cualquier otra jurisdicción de un Estado o Distrito de Columbia, en las cuales se podría establecer tales zonas.[68]

Ahora bien, el *Foreign Trade Zones Act* también dispuso lo relativo al funcionamiento y la administración de las provisiones de ese cuerpo legal.[69] **Es entonces la Junta quien posee la autoridad para otorgarle a las corporaciones el privilegio de establecer, operar y mantener una Zona de Comercio**

---

[65] *Id.* (énfasis nuestro).

[66] Ley Púb. Núm. 590 de 18 de junio de 1934, 19 USCA 81a *et seq*.

[67] El lenguaje expreso, respecto al propósito de esta disposición, es el siguiente:

> To provide for the establishment, operation, and maintenance of foreign-trade zones in ports of entry to the United States, to expedite and encourage foreign commerce, and for other purposes. Íd.

[68] 19 USCA sec. 81a.

[69] *Id.*

**Exterior**.[70] Sujeto a que la Junta encuentre que un plan propuesto y su localización es idóneo para la consecución del propósito de una Zona de Comercio Exterior, y que las facilidades y accesorios propuestos son suficientes, aprobará la concesión.[71]

Cónsono con la autoridad concedida por el Congreso, se aprobaron las regulaciones necesarias para viabilizar el funcionamiento de la Junta.[72] En fin, estas reglas proveen el marco legal para cumplir el propósito del *Foreign Trade Zones Act*, en el contexto de la política económica y comercial de los Estados Unidos.[73] Similar al estatuto, el reglamento reitera que es la Junta a quien se le ha delegado la autoridad para definir las reglas y reglamentos en torno a las Zonas de Comercio Exterior.[74] **Crucialmente, es a este ente a quien le compete autorizar la actividad de producción en las zonas y sub-zonas**.[75]

### III

Como vimos, la controversia que nos ocupa en esta ocasión responde a una interrogante sencilla. ¿Qué requisitos deben satisfacerse para que una empresa pueda acogerse a la exención contributiva, en beneficio de los

---

[70] 19 USCA sec. 81b.
[71] 19 USCA sec. 81g.
[72] Véase 15 CFR secs. 400-400.63
[73] 15 CFR sec. 400.1
[74] 15 CFR sec. 400.3.
[75] Íd.

exportadores desde las Zonas de Comercio Exterior? Según aduce Lilly, y como entendió el foro primario, solo le es necesario satisfacer tres (3) requisitos, a saber: (1) que la empresa esté autorizada a hacer negocios en Puerto Rico, (2) que se encuentre localizada dentro de una Zona de Comercio Exterior y (3) que el ingreso reclamado proceda únicamente de la actividad de exportación.

*A contrario sensu*, el Municipio de Carolina sostiene que existe un requisito adicional, entiéndase, la necesidad de declarar previamente los productos que se fueran a exportar, para poder reclamarlos para fines de la exención contributiva. Arguyen que esto es necesario para cumplir con el mandato estatutario. Igual postura adoptó el foro intermedio, al afirmar que existen requisitos adicionales a satisfacer, de conformidad con cierto documento denominado **Acta de Zonas Exteriores**.

Tras ponderar ambas posturas, **forzoso es coincidir con la peticionaria**. De entrada, conviene examinar nuevamente el lenguaje expreso de la Sección 9(31), *supra*. Esta disposición declara que se exime del pago de patentes:

> **[e]xclusivamente el ingreso derivado de la actividad de exportación generada de empresas localizadas en una Zona de Comercio Exterior,**

incluyendo el ingreso que generen los productos utilizados en el proceso de manufactura, mezcla o embalaje realizado dentro de la zona, **establecida conforme a lo dispuesto en el Acta de Zonas de Comercio Exterior de 1934 (19 U.S.C. 819a)**, por una entidad incorporada bajo las leyes del Gobierno de Puerto Rico o por una compañía autorizada a hacer negocios en Puerto Rico, excluyendo a las compañías dedicadas a la compra y venta de crudo y sus derivados, **cuyas operaciones se lleven a cabo a tenor con lo dispuesto en el Acta de Zonas de Comercio Exterior**.(Énfasis suplido).[76]

En fiel descargo de nuestra función adjudicadora, debemos interpretar esta Sección, de conformidad con los principios de hermenéutica que hemos establecido.

Como punto de partida, nuestro marco interpretativo dispone que las exenciones contributivas "no deben ser interpretadas restrictivamente si ello derrota la intención legislativa".[77] Cónsono con ello, nuestro análisis debe comenzar precisamente auscultando esa intención. Así, de una simple lectura de la exposición de motivos de la Ley Núm. 131-1999, podemos observar que la intención del legislador fue otorgar una exención "del pago de patentes municipales **exclusivamente al volumen de negocios derivado de la exportación** de aquellas **empresas** cuyas operaciones se encuentren en las **Zonas de Comercio Exterior**".[78] Según expresó la Asamblea Legislativa en la exposición de motivos de esa medida, **era necesaria la exención de todo tipo de contribución**, para así poder cumplir con el **objetivo congresional**.[79]

---

[76] 21 LPRA sec. 651h (derogada).
[77] *Pepsi-Cola v. Mun. de Cidra*, *supra*, pág. 738.
[78] Ley Núm. 131-1999, 1999 (Parte 1) LPR 418.
[79] Íd., pág. 417.

Además, sabemos que el propio Congreso ideó las Zonas de Comercio Exterior con el fin de agilizar y fomentar el comercio exterior.[80]

El examen del historial detrás de la exención contributiva consignada en la Sección 9(31) de la Ley de Patentes Municipales, *supra*, al igual que el propósito de las Zonas de Comercio Exterior, nos convence del fin perseguido en este esquema comercial. Particularmente, estamos ante un marco regulatorio que ha tenido insumo tanto del Congreso, como de nuestra Asamblea Legislativa.

Por un lado, el Congreso federal dispuso el mecanismo y los procedimientos mediante los cuales se pueden establecer las Zonas y Sub-Zonas de Comercio Exterior. Además, delegó únicamente en la Junta de Zonas de Comercio Exterior la facultad para determinar si una empresa es acreedora de la autorización para acceder a dichas zonas y para auscultar si esta última se ha mantenido en cumplimiento con los requisitos para retener el privilegio concedido.

De otra parte, nuestra Asamblea Legislativa, luego de reconocer la preeminencia del interés federal en esta área —**lo que surge sin ambages del *Foreign Trade Zones Act*—** se vio precisada a **complementar** dicho interés. En particular, nuestros legisladores entendieron que el

---

[80] Ley Púb. Núm. 590 de 18 de junio de 1934, 19 USCA 81a *et seq*.

interés que promueven las Zonas de Comercio Exterior no rinde servicio solamente a los Estados Unidos en general, sino también, especialmente, a la economía de Puerto Rico. Así, entendieron que una exención contributiva facilitaría la consecución exitosa del fin ya propuesto por el Congreso.

De lo anterior se desprende que estamos ante un área en la cual el campo ha sido ocupado, en distintos aspectos, por los gobiernos federales y estales. El Gobierno federal ha creado las Zonas de Comercio Exterior y se ha reservado para sí la **facultad exclusiva** para regular su funcionamiento. El Gobierno de Puerto Rico fue más allá y auxilió el esquema federal al disponer una **exención contributiva abarcadora** sobre los productos objeto de exportación. Forzoso es concluir que en esta área el Municipio de Carolina, como todos los municipios de Puerto Rico, carece de ámbito para imponer requisitos adicionales a los ya exigidos por los gobiernos de superior jerarquía.

Evidentemente, nuestra Asamblea Legislativa concibió la exención contributiva de la Sección 9(31) de la Ley de Patentes Municipales, *supra*, para que aplicara a aquellos ingresos de exportación que hubiesen sido generados en actividades fomentadas bajo el *Foreign Trade Zone Act* y mediante la autorización de la Junta de Zonas de Comercio Exterior. Nada más podemos atribuir al lenguaje que indica que la exención beneficia a aquellas

empresas "cuyas operaciones se lleven a cabo a tenor con lo dispuesto en el Acta de Zonas de Comercio Exterior".[81]

En cuanto a esto, debemos expresarnos sobre las conclusiones que el Tribunal de Apelaciones hizo en su dictamen. Según estimó el foro intermedio, "resulta necesario auscultar qué dispone **el Acta de Zonas de Comercio Exterior de Lilly Inc. en particular**, para dar cumplimiento cabal a la última oración incorporada en la sección de la Ley de Patentes citada".[82]

Lo anterior revela un detalle preocupante en el razonamiento del foro recurrido. Tal y como nos destacan tanto Lilly y la CFI, las expresiones del tribunal *a quo* parecen atribuirse a un error en traducción de la palabra "Acta". Un examen del lenguaje utilizado en el dictamen recurrido parece sugerir que el Tribunal de Apelaciones entendió que el lenguaje de la Sección 9(31), *supra*, se refiere a un **documento** particular. Esto es, el decreto mediante el cual la Junta de Zonas de Comercio Exterior autorizó a Lilly a utilizar la Sub-zona 7k.

Desafortunadamente, el lenguaje estatutario no se refiere a esto. La referencia al Acta de Zonas de Comercio Exterior es en alusión al *Foreign Trade Zones Act* de 1934. La palabra "Acta" es una traducción, un tanto accidentada, de la palabra "Act", que, en efecto,

---

[81] 21 LPRA sec. 651h (derogada).
[82] Apéndice del *Certiorari*, *Sentencia* del 29 de julio de 2020, pág. 25.

se refiere a una ley o estatuto. Como intimamos, esta mención solo implica que la empresa que pretenda acogerse a los beneficios de la exención contributiva debe atenerse al fiel cumplimiento de las exigencias que le impone el *Foreign Trade Zones Act*.

Según expusimos en el derecho, no existen otros deberes que le imponga el *Foreign Trade Zones Act* a Lilly, o cualquier otra empresa debidamente ubicada en una Zona de Comercio Exterior, que deban satisfacerse. **Por tanto, resolvemos que la exención contributiva de la Sección 9(31) de la Ley de Patentes Municipales**, *supra*, **aplica a todos los productos exportados por una empresa que opere en una Zona de Comercio Exterior, independientemente de que hayan sido declarados previamente al municipio donde radiquen sus operaciones.**

En tales circunstancias, la Doctrina del Campo Ocupado veda la facultad de los municipios para imponer requisitos ulteriores a los exigidos por las normativas federales y estatales. En particular, no habiendo fundamento alguno para ello, **<u>los municipios no pueden condicionar la procedencia de esta exención contributiva al cumplimiento con requisitos que no fueron impuestos por el Congreso, la Junta de Zonas de Comercio Exterior o la Asamblea Legislativa de Puerto Rico</u>.**

Habiendo dispuesto de la controversia doctrinal, retornemos a los hechos particulares de este caso. Aquí, Lilly es una empresa localizada en la Sub-Zona 7k, del

Municipio de Carolina. No existe controversia en que ella se encuentra autorizada a operar en Puerto Rico y en una Sub-Zona de Comercio Exterior. Además, no se cuestiona que los ingresos que la peticionaria pretende excluir del pago de patentes municipales, en este caso particular, obedecen exclusivamente a actividades de exportación. **Al evaluar la totalidad del marco legal expuesto, colegimos que no existen otros requisitos para acogerse a dicha exención contributiva más allá de los siguientes: (1) que sea una actividad de exportación generada por una empresa localizadas en una Zona de Comercio Exterior; (2) que la empresa haya sido autorizada a ubicarse en dicha zona y (3) que esta esté autorizada a hacer negocios en Puerto Rico.** Lilly cumple con los requisitos antes dispuestos y, por ende, debe ser acreedora del beneficio contributivo que emana de la Sección 9(31) de la Ley de Patentes Municipales, *supra*.

## IV

Por los fundamentos previamente consignados se revoca la *Sentencia* del Tribunal de Apelaciones y se reinstala el fallo emitido por el Tribunal de Primera Instancia. La exención contributiva que surge de la Sección 9(31) de la Ley de Patentes Municipales aplica a todos los productos exportados por una empresa que opere con la debida autorización en Puerto Rico, dentro de una Zona de Comercio Exterior y sujeto a los requisitos del

*Foreign Trade Zone Act* de 1934, sin requisito ulterior que pueda imponer un municipio.

Se dictará Sentencia de Conformidad.


                                        Edgardo Rivera García
                                            Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Lilly del Caribe, Inc.<br><br>Peticionaria<br><br>v.<br><br>Municipio Autónomo de Carolina y otros<br><br>Recurrido | AC-2020-0100 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 2 de agosto de 2022.

Por los fundamentos expuestos en la Opinión que antecede, la que se hace formar parte íntegra de la presente, se revoca la Sentencia del Tribunal de Apelaciones y se reinstala el fallo emitido por el Tribunal de Primera Instancia. La exención contributiva que surge de la Sección 9(31) de la Ley de Patentes Municipales aplica a todos los productos exportados por una empresa que opere con la debida autorización en Puerto Rico, dentro de una Zona de Comercio Exterior y sujeto a los requisitos del Foreign Trade Zone Act de 1934, sin requisito ulterior que pueda imponer un municipio.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo